UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------

MICHAEL AINETTE,

                      Plaintiff,

      -against-

THE MARKET BASKET INC. and MARK
CHERNALIS,

                 Defendants.

19cv04506 (DF)

**MEMORANDUM
AND ORDER**

---------------------------------------------------------

THE MARKET BASKET INC. and MARK
CHERNALIS,

              Third-Party Plaintiffs,

      -against-

MERCEDES-BENZ USA, LLC, DAIMLER
AG, and GRAMMER AG,

           Third-Party Defendants.

---------------------------------------------------------

**DEBRA FREEMAN, United States Magistrate Judge:**

      This personal injury case, which is before this Court on consent pursuant to 28 U.S.C.

§ 636(c), arises out of a motor-vehicle accident, in which the vehicle that was being driven by

plaintiff Michael Ainette ("Plaintiff") – a Mercedes – was allegedly rear-ended by a vehicle that

was owned by defendant The Market Basket Inc. ("Market Basket") and driven by defendant

Mark Chernalis ("Chernalis").  Plaintiff accused Chernalis of negligently driving the Market

Basket vehicle and causing Plaintiff's injuries.

      During the course of the litigation, however, Market Basket and Chernalis apparently

learned that, in another jurisdiction, a products-liability class-action suit had been filed against

Mercedes-Benz USA, LLC ("MBUSA") and that, in that case, allegations had been made that a

headrest component in certain Mercedes vehicles was defective and had resulted in head injuries. Market Basket and Chernalis then secured leave to implead MBUSA as a third-party defendant in this case, and they ultimately proceeded to assert third-party claims against MBUSA, as well as against MBUSA's corporate parent, Daimler AG ("Daimler"), and the manufacturer of the purportedly defective part, Grammer AG ("Grammer") (collectively, "Third-Party Defendants").[1]  Essentially, Market Basket and Chernalis ("Third-Party Plaintiffs") contend that Plaintiff's vehicle contained a defective headrest component, that this component deployed improperly upon the rear-end collision, that this either caused or contributed to Plaintiff's injuries, and that Third-Party Defendants should therefore bear all or some responsibility for Plaintiff's claimed damages.

Currently before the Court are motions by (1) MBUSA (eventually joined by Daimler) (Dkts. 32, 48), and (2) Grammer (Dkt. 56) to dismiss the claims asserted against them in the Third-Party Complaint.  This Memorandum and Order will only address the first of these two motions; the motion by Grammer was filed later, raises some unique issues, and will be addressed by the Court in a separate decision.  For the reasons discussed below, the motion of MBUSA and Daimler (herein, the "Moving Parties") to dismiss the claims against them asserted by Third-Party Plaintiffs (Dkt. 32) is granted, although the Court will afford Third-Party Plaintiffs the opportunity to replead certain of the third-party claims at issue.

---

[1] The Third-Party Complaint also named Daimler North America Corporation ('DNAC') as a third-party defendant, but Market Basket and Chernalis later stipulated to the dismissal of their claims against DNAC (Dkt. 31), and the Court "so ordered" that stipulation on July 24, 2020 (Dkt. 34).

## BACKGROUND

### A.   Factual Background

The facts summarized herein are taken from the Third-Party Complaint (*see* Third-Party Complaint and Demand for Jury Trial, dated Mar. 6, 2020 ("TPC") (Dkt. 19)), and are accepted as true for purposes of the Moving Parties' motion to dismiss.

Plaintiff alleges that, on or about October 4, 2017, he was driving on the Bronx River Parkway in Westchester, New York, when a vehicle owned by Market Basket and driven by Chernalis struck the rear of his car.  (TPC ¶ 123.)  At the time of the accident, Plaintiff was driving a 2012 Mercedes-Benz (the "Mercedes").  (*Id.* ¶ 124.)  Embedded in the headrest of the Mercedes was a mechanism known as an "active head restraint," or "AHR," which was designed to spring forward upon a rear-end collision of a pre-defined degree of severity, and "rapidly push the headrest out to catch the occupant's head and prevent whiplash."  (*Id.* ¶¶ 8, 13.)  MBUSA has "branded the AHR in its vehicles as 'NECK-PRO.'"  (*Id.* ¶ 8.)  The NECK-PRO AHR in Plaintiff's vehicle deployed at the time of the accident.  (*Id.* ¶¶ 30, 126.)

Third-Party Plaintiffs allege, however, that MBUSA's NECK-PRO AHRs "share a common, uniform defect" that can cause them "[to] deploy without warning or external force from a collision," or "under external forces under [the] intended thresholds of severity, without warning" and "[to] strike the back of the occupant's head."  (*Id.* ¶¶ 9-10.)  Specifically, the NECK-PRO AHR contains a "plastic bracket that acts as the triggering mechanism and holds the spring-loaded release in place until a sensor [indicates] a rear-end collision exceeding a certain threshold of severity."  (*Id.* ¶ 13.)  At all times, the springs inside the AHR exert 75 pounds of force on the plastic bracket.  (*Id.* ¶ 144.)  The bracket is made from a "low-quality, inexpensive plastic" as a "cost-saving measure" (*id.* ¶ 143), and therefore "cannot withstand this constant

pressure and is prone to cracking and breaking . . . and spontaneously deploying" (*id.* ¶ 145). When the plastic breaks down and the NECK-PRO AHR deploys at random, it can suddenly strike "the driver or passenger in the back of the head, with enough force to potentially cause injuries." (*Id.* ¶ 146.)

Third-Party Plaintiffs allege that MBUSA, which is a U.S. car manufacturer and distributor (*id.* ¶¶ 36-37), and Daimler, which is MBUSA's corporate parent, headquartered in Germany (*id*. ¶¶ 40-43), were "intimately involved in the design and testing of the AHR systems and were aware that they were designed with an inferior, inexpensive plastic" which "cracks and breaks down prematurely under the constant pressure exerted by the springs in the AHR." (*Id.* ¶¶ 14, 18.) [2]  Despite knowing of the defective design and manufacturing of the AHR, MBUSA nevertheless approved the AHR for use in its vehicles. (*Id.* ¶ 19.)  According to the TPC, MBUSA has, in fact, acknowledged that the AHR activates for "no reason" (*id.* ¶ 24), and had received complaints about the AHR defect from customers prior to Plaintiff's accident (*id.* ¶ 163).  MBUSA has allegedly taken "no action to correct the problem" and has even "attempted to conceal the defect by blaming the spontaneous deployments on other issues." (*Id.* ¶¶ 22-23.)

Third-Party Plaintiffs allege that the AHR in Plaintiff's Mercedes deployed on the day of the accident due to a design defect (*id.* ¶ 128) and/or a manufacturing defect (*id.* ¶ 129), as "the external forces on Plaintiff's vehicle at the time [of the accident] were of an insignificant threshold and did not reach the pre-defined degree of severity required for the AHR to activate in its normal use and operation" (*id.* ¶ 127).  They contend that, "if [] Plaintiff sustained injuries as

---

[2] According to the TPC, Grammer, which is headquartered in Germany, "develops and manufactures automotive interior components" including the "headrests that include the defective AHR," and supplies them to Mercedes for installation in their vehicles. (*Id.* ¶¶ 100-02.)

alleged," then this "was due to the design and/or manufacturing defect of the AHR present in his vehicle."  (*Id.* ¶ 130.)

### B.   Procedural History

Plaintiff commenced his action against Market Basket and Chernalis by filing a Summons and Complaint on June 15, 2018 in the Supreme Court of the State of New York, County of Bronx.  (*See* Verified Complaint, dated June 7, 2018 ("Compl.") (Dkt. 1-1).)  Market Basket and Chernalis filed an Answer on July 6, 2018 (*see* Dkt. 1-2), and removed the case to this Court on May 16, 2019, based on diversity jurisdiction.[3]  (*See* Dkt. 1.)  On October 8, 2019, the then-existing parties to the action consented to proceed before this Court for all purposes, pursuant to 28 U.S.C. § 636(c).  (Dkt. 9.)

On December 16, 2019, the parties submitted a joint status report, in which Market Basket indicated that it planned to commence a third-party action against MBUSA.  (*See* Dkt  10.)  With leave of Court (*see* Dkt. 16), Market Basket and Chernalis eventually filed the TPC on March 10, 2020 (Dkt. 19).  On March 15, 2021, Grammer consented to this Court's exercise of jurisdiction over this matter, for all purposes.  (*See* Dkt. 66.)  MBUSA, Daimler, and DNAC consented to this Court's exercise of jurisdiction over this matter, for all purposes, on March 16, 2021.  (*See* Dkt. 67.)[4]

---

[3] Neither the Moving Parties nor Third-Party Plaintiffs raise the issue of which state's substantive law applies to this case.  (*See* MBUSA Mem.; Losman Aff. I; Losman Aff. II.)  "Where, as here, the parties do not raise choice-of-law as an issue, 'it can be said that they have consented to the application of the forum state's law.'"  *Scharnikow v. Siracuse*, No. 15cv6991 (DRH) (SIL), 2016 WL 7480360, at *3 (E.D.N.Y. Dec. 6, 2016), *report and recommendation adopted*, 2016 WL 7480364 (Dec. 29, 2016) (citing *Mangual v. Pleas*, No. 02cv8311 (CBM), 2005 WL 2179083, at *2, n.1 (S.D.N.Y. Sept. 8, 2005)).  Accordingly, this Court will apply New York law.

[4] As noted above (*see supra*, at n.1), this Court approved the stipulation of dismissal of Market Basket's and Chernalis's third-party claims against DNAC on in July 2020, prior to

1.    **The TPC**

The TPC is lengthy (containing 253 paragraphs), but it basically sets out the factual

allegations described above.  As pleaded, it contains eight claims.  Three of those claims

(Counts 1-3) are asserted against all Third-Party Defendants, and are titled, respectively,

"Negligence," "Breach of Warranty," and "Strict Products Liability."  (*See* TPC, at 28, 29, 30.)

Four of the remaining claims (Counts 3-7) are directed only against MBUSA and Daimler; these

claims allege violations of the New York General Business Law, a breach of the implied

warranty of merchantability, and fraud by concealment.  (*See id.*, at 31, 33, 35, 37.)  The final

claim (Count 8) is directed solely against Grammer, and it also alleges fraud by concealment.

(*See id.*, at 38.)

2.    **MBUSA's Motion To Dismiss**

MBUSA filed its motion to dismiss the TPC on July 23, 2020.  (*See* Third Party

Defendant Mercedes-Benz USA, LLC's Notice of Motion To Dismiss Third-Party Plaintiffs'

Complaint, dated July 23, 2020 ("MBUSA Mtn.") (Dkt. 32); Memorandum of Law in Support of

Mercedes-Benz USA, LLC's Pre-Answer Motion to Dismiss the Third Party Complaint, dated

July 23, 2020 ("MBUSA Mem.") (Dkt. 33).)

At the outset of its moving brief, MBUSA notes that the apparent genesis of the TPC was

Third-Party Plaintiffs' discovery of the putative class-action suit, *Lewis et al. v. Mercedes-Benz

USA et al.*, No. 9:19-cv-81220 (S.D. Fl.), in which the plaintiffs made claims that certain

---

DNAC's filing of an express consent to this Court's exercise of jurisdiction over this matter.
This Court assumes that DNAC's recent consent, filed on March 16, 2021, is intended to be
retroactive, and that no party is now seeking to challenge this Court's exercise of authority in
approving the stipulation of dismissal.  If this assumption is in error, then the parties are directed
to bring this to the Court's attention without delay.

MBUSA vehicles were equipped with defective AHR latching mechanisms.  (*See* MBUSA

Mem., at 1.)  Indeed, MBUSA asserts that the TPC was largely "cut and pasted" from the *Lewis*

complaint.  (*Id.*)  MBUSA explains, however, the principal allegations made in the *Lewis* case

are that the AHR latching mechanisms in question "are made of a defective plastic that can

spontaneously shatter, causing the [headrest] cushion to release without a command from the

vehicle's systems (*i.e.*, not during a rear-end collision)" (*id.*), and "destroy[ing]" the latching

mechanism so that "it cannot be reset" thereafter (*id.*).  In contrast, according to MBUSA, it is

"undisputed" in this case that the AHR in Plaintiff's vehicle not only "deployed during the rear-

end collision here," but, in addition, "was found to be in working order after the accident, and

was simply reset by pushing it closed by hand."  (*Id.*, at 1.)  Further, MBUSA states that "Market

Basket *knew* the AHR's latching mechanism had not shattered and *knew* it had been reset, all

*before* it sued MBUSA."  (*Id.* (emphasis in original).)  While stopping short of accusing

Third-Party Plaintiffs or their counsel of bad faith or a lack of reasonable inquiry that would run

afoul of Rule 11,[5] MBUSA suggests, based on these purportedly undisputed facts, that the TPC

"rais[es] thorny questions" about whether its stated allegations "had any plausible evidentiary

support at the time of filing."  (*Id.*, at 1-2.)

　　　　Despite this pointed introduction, MBUSA goes on to state that "the Court need not delve

into such issues," as, in its view, the TPC would, in any event, be subject to dismissal under

---

[5] Rule 11 of the Federal Rules of Civil Procedure provides, in part, that by presenting a
pleading to the court, an attorney "certifies that to the best of the [attorney's] knowledge,
information, and belief, formed after an inquiry reasonable under the circumstances . . . the
factual contentions have evidentiary support or, if specifically so identified, will likely have
evidentiary support after a reasonable opportunity for further investigation or discovery."
Fed. R. Civ. P. 11(b)(3).

Rule 14 of the Federal Rules of Civil Procedure (which governs the standards for impleader) or because its allegations are insufficiently pleaded.  (*Id.*, at 2.)

As to Rule 14, MBUSA points out that "Plaintiff's suit is premised upon the negligent operation of a motor vehicle" by Chernalis, while the products-liability and related allegations asserted by Third-Party Plaintiffs against MBUSA "are separate, distinct, and not contingent upon the underlying alleged negligent operation of a vehicle."  (*Id.*, at 3-4.)  According to MBUSA, the third-party claims against it must be dismissed because they do not "derive from the main claim."  (*Id.*, at 4 (arguing that, "if a third-party pleading is based on an independent basis for liability, it may not stand").)

As to the adequacy of Third-Party Plaintiffs' pleading, MBUSA raises a number of arguments under Rules 8(a), 9(b) (as relevant to the alleged fraud claims), 12(b)(6), 12(e), and 12(f) of the Federal Rules of Civil Procedure, addressed to the several claims pleaded against it in the TPC.  (*See id.*, at 8-16.)  Among other things, MBUSA argues that allegations of the TPC are "entirely conclusory" and, as such, fail to meet both the "[m]inimal" pleading standard of Rule 8(a) and the "plausibility" standard of Rule 12(b)(6), as construed by *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Lastly, again suggesting that the allegations of the TPC run counter to the known facts of this case, MBUSA argues that "[i]f the Court determines that [Third-Party Plaintiffs'] claims are salvageable," then the Court should (1) under Rule 12(f), "strike the allegations copied from *Lewis*" (*see id.*, at 15-16 (contending, in particular, that "the 'broken plastic' allegations in the TPC are immaterial and impertinent" and thus subject to being stricken under the Rule)), and (2) under Rule 12(e), order Third-Party Plaintiffs to file "a coherent pleading to which [MBUSA] is able to respond" (*id.*, at 16).

On August 24, 2020, Third-Party Plaintiffs filed an attorney affirmation in opposition to MBUSA's motion.  (Affirmation [of Nathan Losman, Esq.] in Opposition to Third Party Defendant Mercedes Benz USA, LLC's Motion to Dismiss the Third-Party Complaint, dated Aug. 24, 2020 ("Losman Aff. I") (Dkt. 37).).[6]  Through this affirmation, Third-Party Plaintiffs state that they are voluntarily withdrawing Counts 2, 4, 5, 6, and 7 of the TPC, and note that, as Count 8 contains no allegations against MBUSA, it is not at issue on MBUSA's motion.  (*Id.* ¶ 2.)  Third-Party Plaintiffs maintain, however, that the remaining counts at issue – *i.e.*, Counts 1 and 3, which are based on MBUSA's alleged negligence and on principles of strict products liability – are appropriate third-party claims, are adequately pleaded, and should survive MBUSA's motion to dismiss.  (*See generally id.*)

More specifically, Third-Party Plaintiffs argue that these two claims meet the requirements of Rule 14 for third-party claims, as they assert that, if Third-Party Plaintiffs are found liable to Plaintiff for his injuries, then they would be entitled to claim over against MBUSA for having caused Plaintiff's injuries in whole or in part.  (*See id.* ¶ 15 (stating that MBUSA "may be liable [to Third-Party Plaintiffs] for all or part of the claim being made by plaintiff by reason of the failure prone, faulty and defective AHR mechanism"); *see also id.* ¶¶ 16-17, 23-24.)  In addition, Third-Party Plaintiffs argue that Rule 8(a) does not require

---

[6] Contrary to the requirements of the Local Civil Rules of this Court, Third-Party Plaintiffs failed to submit a memorandum of law in connection with their opposition.  *See* Local Civ. R. 7.1(a)(2), (b) (providing that, absent permission of the Court, all oppositions to motions shall include "a memorandum of law, setting forth the cases and other authorities relied upon in [opposition to] the motion").  Although, in this instance, the Court will exercise its discretion to overlook this failure, *see Greene v. Sampson*, No. 18cv6103 (PMH), 2021 WL 355477, at *2, n.5 (S.D.N.Y. Feb. 2, 2021) ("[t]he Court has discretion to overlook a failure to comply with Local Civil Rule 7.1"), Third-Party Plaintiffs are cautioned that, in the future, they will be expected to comply fully with all rules of the Court.

detailed factual allegations, but merely "enough detail to give the defendant notice of the nature

of the claim[s]," which, they say, they have provided, by alleging "the long and sordid history of

complaints about NECK-PRO deploying without proper command," and by pleading that

MBUSA "knew or should have known" that the alleged defect in the AHR system "could and

would cause injury," yet "did nothing whatsoever" to address or correct the problem.  (*Id.*

¶¶ 13-14, *see also id.* ¶ 25.)  They further assert that, if the Court takes the allegations of the TPC

as true, as it must for purposes of the motion to dismiss, then a plausible inference of "likely

misconduct" may be drawn, satisfying the pleading requirements clarified in *Iqbal*.  (*See id.*

¶¶ 11-13.)

Overall, Third-Party Plaintiffs contend that MBUSA's motion is flawed because it is

wrongly focused on "the level of proof needed to sustain a claim at trial."  (*Id.* ¶ 18.)  Third-Party

Plaintiffs concede that there are certain facts of which they are not currently aware – regarding

"precise[] engineering and scientific details about the AHR system, and the failure modes that

have occurred" – but they argue that these are appropriate matters for discovery, and should not

provide grounds for dismissal at the pleading stage.  (*Id.* ¶ 19; *see also id.* ¶ 27 ("That is what

discovery is for . . . .").)  In fact, Third-Party Plaintiffs argue that "[i]t is manifestly clear that

what MBUSA is doing is utilizing [its] motion . . . to avoid discovery and hide away its potential

culpability for a known defect that it did nothing about."  (*Id.* ¶ 20; *see also id.* ¶ 27 (arguing that

MBUSA is "desperately trying to avoid" discovery).)

MBUSA filed a reply memorandum on September 9, 2020.  (Reply Memorandum of Law

in Further Support of Mercedes-Benz USA, LLC's Pre-Answer Motion to Dismiss the Third-

Party Complaint, dated Sept. 9, 2020 ("MBUSA Reply") (Dkt. 40).)  In its reply, MBUSA

returns to its opening theme – *i.e.*, that Third-Party Plaintiffs copied the allegations of the *Lewis*

Complaint "without pleading any facts to show [that] the purported class theory is in play here,"
let alone "any evidence to support their allegations." (*Id.*, at 2.) MBSA insists that Third-Party
Plaintiffs may not "properly sue a defendant based solely on copied claims of 'wrongdoing'
made by different plaintiffs in a different case" (*id.*, at 1), and accuses Third-Party Plaintiffs of
having never inspected Plaintiff's vehicle or the AHR at issue (*id.*, at 2). MBUSA also reiterates
its arguments that the claims in the TPC are improper under Rule 14, as Third-Party Plaintiffs do
not allege that "MBUSA had anything to do with the operation of that vehicle, or in any way
caused it to be negligently operated when it rear-ended Plaintiff" (*id.*, at 5), and that the claims
are inadequately pleaded.

### 3. Daimler's Application To Join MBUSA's Motion

On November 20, 2020, Daimler requested leave to join MBUSA's motion to dismiss
(*see* Dkt. 44), and the Court granted it leave on November 24, 2020, setting a briefing schedule
for the submission of further motion papers (*see* Dkt. 46). Daimler then promptly filed a "Notice
of Joinder in Motion to Dismiss." (*See* Third Party Defendant Daimler AG's Joinder in
Mercedes-Benz USA, LLC Motion to Dismiss Third-Party Plaintiffs' Complaint, dated Nov. 24,
2020 (Dkt. 48).) In that submission, Daimler simply states its reliance on the "factual and legal
arguments" that had been raised by MBUSA, and requests that the TPC be dismissed against it
"for the reasons stated" in MBUSA's motion. (*Id.*, at 1-2.)

On December 7, 2020, in response to Daimler's submission, Third-Party Plaintiffs filed
another attorney affirmation, which is largely identical to the one filed by Third-Party Plaintiffs
in response to MBUSA's motion, except that it references Daimler's potential liability on the
third-party claims, as well as MBUSA's. (*See generally* Affirmation [of Nathan Losman, Esq.]
in Opposition to Third-Party Defendant Daimler AG's Motion to Dismiss the Third-Party

Complaint, dated Dec. 7, 2020 ("Losman Aff. II") (Dkt. 49).)[7]  In addition, in discussing the

need for (and propriety of) discovery to flesh out the factual details of their claims, Third-Party

Plaintiffs assert that "discovery will reveal what the deployment parameters and threshold are,

and[,] thus, will reveal what deficiencies lead to un-commanded deployment of NECK-PRO, and

for how long did MBUSA and [Daimler] know that it had a problem with the AHR system it

specified for its vehicles sold in the USA."  (*Id*. ¶ 20.)

    Daimler filed a reply brief on December 15, 2020 (Third Party Defendant Daimler AG's

Joinder in Mercedes-Benz USA, LLC Reply Brief in Support of Motion to Dismiss Third-Party

Complaint, dated Dec. 15, 2020 (Dkt. 51)), generally relying on the arguments raised by

MBUSA in its own reply (*see id.* ¶ 2).  In addition, though, Daimler argues that, by conceding

that they need discovery to support their third-party claims, Third-Party Plaintiffs have now

conceded in their opposition that they have "no good faith basis under Fed. R. Civ. P. 8 to allege

that the AHR activated when it should not have."  (*Id.* ¶¶ 4-5; *see also* ¶ 6 (arguing that Third-

Party Plaintiffs are now "transparent that they filed their [TPC] without any underlying factual

support, with the intent of using it as a mechanism to conduct discovery").)  As for the adequacy

of Third-Party Plaintiffs' pleading, Daimler contends that, while "[i]t may be theoretically

'possible' that the AHR activated because of some unspecified 'defect,' [] there are simply no

facts at all, no 'well-pled' allegations of anything else, to suggest that a defect exists in the

subject vehicle."  (*Id.* ¶ 5).  It asserts that the AHR is intended to activate in rear-end collisions,

and argues that the "mere fact that it activated in this rear-end collision is not sufficient under

*Iqbal/Twombly* for Third-Party Plaintiffs to allege it did so because of a defect."  (*Id.*)

---

[7] Once again, Third-Party Plaintiffs filed no opposition memorandum.  (*See supra*,
at n.6.)

**4.**    **Grammer's Motion to Dismiss**

On January 19, 2021, Grammer AG filed its own motion to dismiss the TPC against it. (See Dkts. 56, 57.)  That separate motion was fully briefed as of February 26, 2021 (*see* Dkts. 57 (opposition), 65 (reply)), but, as noted above, the Court will not address Grammer's motion herein.

## DISCUSSION

I.    **APPLICABLE LEGAL STANDARDS**

A.    **Rule 14**

Federal Rule of Civil Procedure 14 "provides that a defending party may serve a summons and complaint on a non-party who 'is or may be liable to it for all or part of the claim against it.'"  *Zohar CDO 2003-1, Ltd. V. Patriarch Partners, LLC*, 286 F. Supp. 3d 634, 656 (S.D.N.Y. 2017) (citing Fed. R. Civ. P. 14(a)(1)).   "It is well established that this rule creates no substantive rights, but 'serves merely as a procedural device to expedite the presentation of a claim having a substantive basis in law.'"  *Johnson Controls, Inc. v. Rowland Tompkins Corp.*, 585 F. Supp. 969, 972 (S.D.N.Y. 1984) (quoting *Index Fund, Inc. v. Hagopian*, 417 F. Supp. 738, 744 (S.D.N.Y. 1976)).  The purpose of Rule 14 is to "'promote judicial economy by eliminating the need for a defendant to bring a separate action against a third-party who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's claim.'"  *Falcone v. MarineMax, Inc.*, 659 F. Supp. 2d 394, 401 (E.D.N.Y. 2009) (citing *Hines v. Citibank, N.A.*, No. 96cv2565 (RJW), 1999 WL 440616, at *2 (S.D.N.Y. Jun. 28, 1999)); *accord Mueller v. Long Island R.R. Co.*, No. 89cv7384 (CSH), 1997 WL 189123, at *6 (S.D.N.Y. Apr. 17, 1997) (noting that the purpose of the Rule is to "promote judicial efficiency by allowing the adjudication of several claims in one action").

A third-party claim, however, "is not permissible simply because it arises out of the same nucleus of facts as the main claim." *Tatintsian v. Vorotyntsev*, No. 16cv7203 (GHW), 2018 WL 3130599, at *5 (S.D.N.Y. Jun. 25, 2018) (citing *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 380 (S.D.N.Y. 2006)).  Rather, a third-party defendant's liability must be "dependent upon the outcome of the main claim," or the third-party defendant must be "potentially secondarily liable as a contributor to the defendant." *Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29, 31 (2d Cir. 1984).

### B.  Rule 8(a)

Rule 8(a) states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Under this Rule, a pleading "does not have to set out in detail the facts on which the claim for relief is based, but must give the court and the defendant fair notice of what [the] plaintiffs claim is and the grounds upon which it rests." *Owens v. Suter,* 02cv8198 (SHS), 2003 WL 942554, at *1 (S.D.N.Y. Mar. 7, 2003) (internal citations and quotations omitted); *see Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir. 1988) ("The statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted.").

### C.  Rule 12

#### 1.  Rule 12(b)(6)

A complaint may be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure where it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. (12)(b)(6).  In deciding a motion to dismiss, the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *accord Jaghory v. New*

*York State Dep't of Ed.*, 131 F.3d 326, 329 (2d Cir. 1997).  The issue is not whether the plaintiff

will ultimately prevail, but whether the plaintiff's claim, as pleaded, is sufficient to afford him or

her the opportunity to proceed on the evidence.  *See Chance v. Armstrong*, 143 F.3d 698, 701 (2d

Cir. 1998).

Thus, the court's function on a motion to dismiss is "not to weigh the evidence that might

be presented at trial but merely to determine whether the complaint itself is legally sufficient."

*Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991) (citing *Goldman v. Belden*, 754 F.2d 1059,

1067 (2d Cir. 1985)).  At the same time, "conclusory allegations or legal conclusions

masquerading as factual conclusions will not suffice to defeat a motion to dismiss."  *Achtman v.*

*Kirby, McInerney, & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (internal alteration and

citation omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S.

at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir.

2010) (internal alteration omitted) (quoting *Iqbal*, 556 U.S. at 678).

In general, on a motion to dismiss, a court must limit its consideration to:  "(1) the factual

allegations in the complaint, which are accepted as true; (2) documents attached to the complaint

as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken;

and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that

are 'integral' to the complaint."  *See Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y.

2003) (citing *Brass v. American Film Techs.*, 987 F.2d 142, 150 (2d Cir. 1993); *Chambers v.*

*Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

2.      **Rule 12(e)**

Rule 12(e) provides that "[a] party may move for a more definite statement of a
pleading," where that pleading "is so vague or ambiguous that the party cannot reasonably
prepare a response."  Fed. R. Civ. P. 12(e); *see also Humpherys v. Nager*, 962 F. Supp. 347,
352-53 (E.D.N.Y. 1997) (noting that a motion under this Rule is proper "when a complaint
pleads a viable legal theory, but is so unclear that the opposing party cannot respond").  The
motion "must point out the defects complained of and the details desired."  Fed. R. Civ. P. 12(e).
Rule 12(e) motions are typically reserved for fairly extreme situations; such a motion "should not
be granted 'unless the complaint is so excessively vague and ambiguous as to be unintelligible
and as to prejudice the defendant seriously in attempting to answer it.'" *Joya v. Verizon
New York, Inc.*, No. 08cv5328 (PKL), 2008 WL 4667987 (S.D.N.Y. Oct. 20, 2008) (citing
*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, No. 00cv1898 (SAS), 2005 WL
1500893, at *2 (S.D.N.Y. Jun. 24, 2005))).

3.      **Rule 12(f)**

Under Rule 12(f), a party may move to strike from a pleading "any redundant,
immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Rule 12(f) motions to
strike "are viewed with disfavor and are infrequently granted." *In re Merrill Lynch & Co., Inc.
Rsch. Rep. Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003).  Usually, such motions are granted
"only for scandalous material." *Allocco v. Dow Jones & Co.*, No. 02cv1029 (LMM), 2002 WL
1484400, at *1 (S.D.N.Y. July 10, 2002).  "[T]o have redundant, immaterial or impertinent
matters stricken from a pleading, [a party] must demonstrate that no evidence in support of the
allegation would be admissible, that the allegations have no bearing on the issues in the case, and
that to permit the allegations to stand would result in prejudice to the movant." *Id.* (citing

*Metrokane, Inc. v. The Wine Enthusiast,* 160 F. Supp. 2d 633, 641-42 (S.D.N.Y. 2001) (internal

quotation marks and citations omitted)).

## II.    <u>MBUSA'S AND DAIMLER'S MOTION TO DISMISS</u>

### A.    **As Framed, the Moving Parties' Challenge<br>to the TPC Under Rule 14 Is Without Merit.**

The Moving Parties first assert that "[t]he TPC must be dismissed entirely as a matter of

law because it does not meet the standards for a Rule 14 third-party complaint."  (MBUSA

Mem., at 2.)  In particular, the Moving Parties assert that the TPC is improper under Rule 14

because the underlying Complaint "is premised upon the negligent operation of a motor vehicle"

(*id.*, at 3), while the third-party claims, which the Moving Parties characterize as being grounded

in products-liability theory, are "separate, distinct, and not contingent upon the underlying

alleged negligent operation of a vehicle" (*id.*, at 3-4).  This argument, as framed, misconstrues

the nature of the third-party claims at issue.

As a fundamental matter, the claims on which Third-Party Plaintiffs still seek to proceed

(Counts 1 and 3 of the TPC) are inartfully pleaded to the extent they are titled "Negligence" and

"Strict Products Liability," as they not actually negligence or products-liability claims.  Rather,

although their underpinnings are certainly found in such law, the claims, fairly construed, are for

*contribution* or *indemnification*.  In effect, Third-Party Plaintiffs are claiming that, if they are

found liable to Plaintiff for his injuries, then MBUSA and Daimler, whose own negligence (in

the products-liability context) allegedly caused or contributed to those injuries, should be

required to pay all or part of the judgment; alternatively, Third-Party Plaintiffs are claiming that,

if they are required to pay damages to Plaintiff, then they should be indemnified by MBUSA and

Daimler for that payment.  (*See* TPC ¶¶ 7 ("If [P]laintiff is determined to have been injured as

alleged, this third-party complaint seeks contribution and indemnification . . . from Third-Party

Defendants"), 188-89 (alleging, in Count I, entitlement to "contribution and/or indemnification" from Third-Party Defendants because their claimed negligence caused, "in whole or in part," any injuries sustained by Plaintiff), 201-02 (alleging, in Count 3, entitlement to "contribution and/or indemnification" because, "[i]f Plaintiff was injured in the accident . . ., then same [was] caused by the direct and proximate result of the Third-Party Defendants' [] failures in designing, manufacturing and offering the Plaintiff's Vehicle, [NECK-PRO] and/or AHR for sale").)

As a general matter, both contribution and indemnification claims are proper under Rule 14.  *See Balbino De Jesus v. AKAM Assocs., Inc.*, No. 09cv4450 (TPG), 2009 WL 3644025, at *1 (S.D.N.Y. Nov. 4, 2009).  As particularly relevant here, contribution claims are not only expressly permitted by New York law[8] in tort actions, *see U.S. ex rel. Ryan v. Staten Island Univ. Hosp.*, No. 04cv2483 (JG) (CLP), 2011 WL 1841795, at *6 (E.D.N.Y. May 13, 2011) (citing N.Y. C.P.L.R. § 1401, which provides for contribution claims among "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death"); *see also SSDW Co. v. Feldman–Misthopoulos Assoc.,* 542 N.Y.S.2d 565, 566 (1st Dep't 1989), but such claims will lie "whether or not the culpable parties are allegedly liable for the injury under same or different theories, and whether or not the party from whom contribution is sought is allegedly responsible for the injury as a concurrent, successive, independent, alternative, or even intentional tort-feasor," *Nassau Roofing & Sheet Metal Co. v. Facilities Dev. Corp.*, 71 N.Y.2d 599, 603 (1988).  Indeed, under New York law, "[i]n causes of action for contribution, 'the emphasis has been on whether the parties involved in the third-party

---

[8] When a case is before this Court on diversity jurisdiction, the Court must look to the governing substantive law – here, the law of New York (*see supra*, at n.3) – to determine whether a claim for contribution or indemnity may lie, *Johnson Controls*, 585 F. Supp. at 972.

action contributed to the same injury rather than the particular theories of law sued upon.'"  *Bd.*

*of Educ. of Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley*, 71 N.Y.2d 21, 25

(1987) (citing *Bd. of Educ. of Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley*,

511 N.Y.S.2d 961, *aff'd*, 71 N.Y.2d 21 (1987)).

For example, in *Contino v. Lucille Roberts Health Spa*, 509 N.Y.S.2d 369 (2d Dep't

1986), Plaintiff brought a personal injury action against a health spa for injuries she allegedly

sustained during an aerobics dance class.  The health spa brought a third-party complaint for

contribution against the Plaintiff's chiropractor, alleging that his negligence in "improperly

advising Mrs. Contino to take an aerobics class . . . directly contributed to her injury."  *Id.*, at

370.  Plaintiff's chiropractor moved to dismiss the third-party complaint, arguing that, as his and

the primary defendants' alleged torts were successive and independent, the primary defendants

could not obtain contribution from him.  *Id.*  The Appellate Division disagreed, and held that the

intent of Section 1401 of the New York Civil Practice Law and Rules, the provision governing

contribution in New York, was "to expand the right of contribution to include not only joint

tortfeasors, but also concurrent tortfeasors, successive and independent tortfeasors, and

alternative tortfeasors," and that "all that is required for contribution is that two people be held

liable for the same personal injury."  *Id.*  Given that it was "clear that there was only one injury,"

and as "the pleadings set forth an ample basis for holding that it is possible" that both the

defendant and third-party defendant contributed to or were responsible for the same injury, the

contribution claim was proper.  *Id.*  Thus, Third-Party Defendants' argument in this case, that the

"TPC should be dismissed for violating Rule 14" because "the entire TPC asserts causes of

action that the underlying Plaintiff has not raised" (MBUSA Mem., at 3-4), misses the mark.

While neither Plaintiff's underlying Complaint nor the TPC, in turn, specifies the nature of the injuries that Plaintiff allegedly suffered in the collision, Plaintiff's counsel has at least indicated, in the same joint letter to the Court in which Market Basket stated its intention to implead MBUSA (Dkt. 10), that Plaintiff suffered a "mild traumatic brain injury" (*see id.*). There would therefore appear to be some basis for Third-Party Plaintiffs to claim that, even if Chernalis were found to have been negligent in rear-ending Plaintiff's car, Plaintiff's head injury could also be found to have been alternatively or additionally caused (or rendered more severe) by a defective headrest.  (*See* TPC ¶¶ 186-88, 201.)  As both Third-Party Plaintiffs and the Moving Parties could thus be "subject to liability for the same injury," *U.S. ex rel. Ryan,* 2011 WL 1841795, at *6, the principles governing contribution claims in New York render Third-Party Plaintiffs' contribution claims permissible under Rule 14.[9]

Third-Party Plaintiffs' indemnification claims are more problematic, but not under Rule 14 *per se*, and not for the reasons argued by the Moving Parties.  As set out above, Rule 14 serves "merely as a procedural device to expedite the presentation of a claim having a substantive basis in law."  *Johnson Controls*, 585 F. Supp. at 972.  The obvious issue here is that,

---

[9] It should be noted that the Court's analysis as to whether Third-Party Plaintiffs' contribution claims are legally permissible under Rule 14 differs from the Court's separate analysis, set out below (*see* Discussion, *infra*, at Section II(B)), as to whether the claims are adequately pleaded under Rule 12(b)(6).  The divergence in the analysis is particularly notable with respect to the necessary element of causation.  For Rule 14 purposes, the Court finds it sufficient that Third-Party Plaintiffs are apparently seeking to claim that the Moving Parties caused, or contributed to, Plaintiff's injuries – and it has looked outside the pleading (to correspondence submitted by the parties referencing the nature of Plaintiff's injury) to satisfy itself that the intended contribution claims fall appropriately within the contours of Rule 14.  On the other hand, in its Rule 12(b)(6) analysis, where the Court confines itself to the allegations contained in the TPC, the Court finds Third-Party Plaintiffs have not adequately pleaded causation, although – based on the evidence outside the pleadings – it appears that they may be able to remedy this defect by amendment.

while the Rule would ordinarily permit a claim for indemnification, *see, e.g.*, *Balbino De Jesus*, 2009 WL 3644025, at *1, Third-Party Plaintiffs have not pleaded any facts *whatsoever* that could suggest that their indemnification claims would have any substantive basis in New York law.

While, "in contribution[,] the loss is distributed among tort-feasors," in indemnity, "the party held legally liable shifts the entire loss to another." *Rosado v. Proctor & Schwartz, Inc.*, 66 N.Y.2d 21, 23-24 (1985).  Contribution arises automatically when certain factors are present and does not require any kind of agreement between or among the wrongdoers. *Id.*, at 24. Indemnity, on the other hand, arises out of a contract which may be express or implied in law to prevent a result which is regarded as unjust or unsatisfactory. *Id.*  To state a claim for implied indemnification, a party must allege a special relationship with the potential indemnitee that gives rise to an implied duty to indemnify. *Transmodal Corp. v. Pianin*, No. 09 CIV. 10497 (DLC), 2010 WL 2629405, at *1 (S.D.N.Y. June 30, 2010) (citing *Triguero v. Consol. Rail Corp.,* 932 F.2d 95, 102 (2d Cir.1991)); *see also Amguard Ins. Co. v. Getty Realty Corp.*, 147 F. Supp. 3d 212, 220 (S.D.N.Y. 2015) ("[A] cause of action for common-law indemnification can be sustained only if:  (1) the party seeking indemnity and the party from whom indemnity is sought have breached a duty to a third person, and (2) some duty to indemnify exists between them.").  The "key element "of an indemnification claim under New York law "is not a duty running from the indemnitor to the injured party, but rather is a separate duty owed the indemnitee by the indemnitor." *Perkins Eastman Architects, P.C. v. Thor Engineers, P.A.*, 769 F. Supp. 2d 322, 330-31 (S.D.N.Y. 2011) (citing *Raquet v. Braun*, 659 N.Y.S.2d 237 (1997)).

In this instance, Third-Party Plaintiffs have not made even the barest suggestion that they had any "special relationship" with the Moving Parties that could have "give[n] rise to an

implied duty to indemnify." *See* TPC; *see also Transmodal Corp.*, 2010 WL 2629405, at *1.  In fact, Third-Party Plaintiffs have not suggested that they had (or currently have) any relationship *at all* with the Moving Parties.  Accordingly, regardless of the general propriety of an indemnification claim under Rule 14, Third-Party Plaintiffs' claims against the Moving Parties for indemnification cannot stand under Rule 12(b)(6).  *See Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 319, 327 (S.D.N.Y. 2010) (third-party plaintiff did not state claim for indemnity against third-party defendant, where third-party plaintiff "ha[d] not explained how he could be found vicariously liable – or liable in any other way imputed by law – because of his relationship with [third-party defendant]").

For the reasons discussed above, the Court finds that Rule 14 does not bar Counts 1 and 3 of the TPC against the Moving Parties, to the extent those Counts plead claims for either contribution or indemnification.  Nonetheless, to the extent those Counts seek indemnification from the Moving Parties, the Court finds, *sua sponte*, that the claims are not viable under New York law, and are therefore subject to dismissal under Rule 12(b)(6), for failure to state a claim.

> **B.   While Permissible Under Rule 14, and Sufficiently Pleaded Under Rule 8(a), Third-Party Plaintiffs' Contribution Claims Are Defective Under Rule 12(b)(6).**

 Having found that Third-Party Plaintiffs' two remaining contribution claims against the Moving Parties (Counts 1 and 3) are permissible under Rule 14, the Court turns to the Moving Parties' additional challenges to the TPC, under Rule 8(a) and 12(b)(6).  There is no basis for the Rule 8(a) challenge, but the Court finds that the contribution claims are, in fact, deficient under Rule 12(b)(6).

Before the Court turns to the relevant pleading standards, however, it notes, as a preliminary matter, that the Moving Parties' emphasis on the actual "facts" as to what "indisputably" occurred in the incident at issue in this case – *i.e.*, the facts relating to whether the plastic component in question performed as intended or not, shattered or not, or demonstrated any defect or not – is misplaced. As noted above, MBUSA's motion, which Daimler has joined, is not based on breach of counsel's duty of reasonable inquiry, under Rule 11, nor does it seek summary judgment based on undisputed material facts drawn from a developed evidentiary record. Rather, despite the Moving Parties' repeated assertions that Third-Party Plaintiffs lack "evidentiary" support for their allegations, the only remaining issues before the Court are whether the *allegations*, as pleaded, provide adequate notice of the basis of Third-Party Plaintiffs' contribution claims, as required by Rule 8(a), and whether they state a claim upon which relief may be granted, as required by Rule 12(b)(6).[10]

All that is required by Rule 8(a) is that a pleading "give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) (*quoting Salahuddin,* 861 F.2d at 42). Dismissal of a pleading under this Rule "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin,* 861 F.2d at 42. That is not the circumstance here. It is plain that, to the extent they plead claims for contribution, Counts 1 and 3 of the TPC allege, at least in general terms, that Plaintiff's injuries were proximately caused, in whole or in part, by the improper deployment of the so-called NECK-PRO AHR mechanism in the headrest in his Mercedes; that

---

[10] Although, as noted above, the Moving Parties have also sought relief under Rule 12(e) and (f), neither of those Rules have any meaningful bearing here. (*See infra*, at n.12.)

the improper deployment occurred because a plastic component of that mechanism was defective; that the Moving Parties were negligent and/or strictly liable for manufacturing and selling the Mercedes with the defective component and/or for failing to warn Plaintiff of the hazard associated with defective product; and that the Moving Parties should therefore be required, by law, to contribute to any damages for Plaintiffs' injuries that may be assessed against Third-Party Plaintiffs.  These allegations are more than sufficient to satisfy the notice requirement of Rule 8(a).

Under Rule 12(b)(6), however, more is required, and there remains the question of whether the pleaded allegations are sufficient, under *Twombly* and *Iqbal*, to state claims for contribution.  To answer this question, the Court must look past the bottom-line assertions of the Third-Party Plaintiffs' entitlement to contribution and consider whether the underlying factual allegations that allegedly give rise to the contribution claims are, themselves, adequately pleaded.  *Corwin v. NYC Bike Share, LLC*, No. 14cv1285 (SN), 2017 WL 1399034, at *1 (Apr. 13, 2017) ("[a]n action over for contribution will not lie unless all of the essential elements of a cause of action against the proposed contributor can be made out") (citing *Jordan v. Madison Leasing Co.*, 596 F. Supp. 707, 710 (S.D.N.Y. 1984)).  More particularly, the Court must determine whether Third-Party Plaintiffs' allegations are sufficient to give rise to a plausible inference that they are entitled to contribution because (1) the Moving Parties were responsible for either a design defect in Plaintiff's vehicle, a manufacturing defect in that vehicle, or a failure to warn of the risk posed by any such defect, and (2) that the defect or the failure to warn caused, or contributed to, Plaintiff's injuries.  After careful review of the allegations contained in Counts 1 and 3 of the TPC, the Court concludes that, as currently pleaded, the TPC does not currently contain factual allegations that are sufficient to state a

contribution claim based on any of Third-Party Plaintiffs' products-liability theories, but that, by amendment, Third-Party Plaintiffs may be able to remedy the insufficiencies in certain of their contribution claims.

**1.    Third-Party Plaintiffs Have Not Adequately Alleged the Existence of a Design Defect, a Manufacturing Defect, or a Failure To Warn.**

There are three products-liability theories under which a party may be found strictly liable for a person's injuries:  (1) "a design defect, where a product as designed is unreasonably dangerous for its intended use," (2) "a manufacturing defect, which renders a product that is ordinarily safe dangerous, so that it causes harm," and (3) "a warning defect, where the inadequacy or failure to warn of a reasonably foreseeable risk of a product causes harm." *Zsa Zsa Jewels, Inc. v. BMW of N. Am., LLC*, No. 15cv6519 (ILG) (RLM), 2016 WL 11713521, at *2 (E.D.N.Y. Aug. 31, 2016) (citing *McCarthy v. Olin Corp.*, 119 F.3d 148, 154-55 (2d Cir. 1997)).[11]  The Court will consider, in turn, whether Third-Party Plaintiffs have adequately pleaded any of these, as the foundation for their contribution claims.

---

[11] Although Third-Party Plaintiffs claim that the Moving Defendants are responsible, in whole or in part, for Plaintiff's injuries under theories of both "negligence" (Count 1) and "strict products liability" (Count 3), New York law, in the products-liability context, treats negligence and strict-liability claims as "functionally equivalent."  *Cosh v. Atrium Medical Corporation*, No. 18cv8335 (ALC), 2020 WL 583826, at *2 (S.D.N.Y. Feb. 6, 2020); *see also Oden v. Boston Scientific Corp.*, 330 F. Supp. 3d 877, 887 (E.D.N.Y. 2018) ("[u]nder New York law, a plaintiff's claim based upon an alleged design defect or manufacturing defect sounding in either negligence or strict liability are functionally equivalent and will be analyzed concurrently"); *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 420 (S.D.N.Y. 2011) ("where the theory of liability is failure to warn, negligence and strict liability are equivalent").  Accordingly, the Court's inquiry regarding the sufficiency of the allegations of Counts 1 and 3 effectively conflate, for purposes of Rule 12(b)(6).

### a.   **Design Defect**

Liability premised on a "defective design" arises where a manufacturer has failed to design a product properly, resulting in a product that is 'unreasonably dangerous for its intended use' or 'whose utility does not outweigh the danger inherent in its introduction into the stream of commerce.'" *Tears v. Bos. Sci. Corp.*, 344 F. Supp. 3d 500, 509-10 (S.D.N.Y. 2018) (quoting *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 107 (1983)).  In order to state a claim for contribution based on the Moving Parties' alleged defective design of the Mercedes NECK-PRO AHR, Third-Party Plaintiffs must plausibly allege, as a threshold matter, that the mechanism, as designed, both "posed a substantial likelihood of harm," and that "it was feasible to design the [headrest] in a safer manner."  *Cavanagh v. Ford Motor Co.*, No. 13cv4584 (JS) (WDW), 2014 WL 2048571, at *2 (E.D.N.Y. May 19, 2014).  A claim based on a purported design defect cannot stand where the pleading fails to allege "facts identifying how the device is defectively designed or the existence of a feasible alternative design."  *Id.* (citing *Bertini v. Smith & Nephew, Inc.*, No. 13cv0079 (BMC), 2013 WL 6332684, at *3 (E.D.N.Y. Jul. 15, 2013)).

On these points, Third-Party Plaintiffs have alleged that the NECK-PRO AHR was designed with "flimsy" and "inferior" plastic (more specifically, that the "plastic bracket in the AHR [was] made from Acrylonitrile Butadiene Styrene, or 'ABS,' a lightweight, recyclable, thermoplastic polymer with relatively cheap production costs"), and that this inferior plastic tended to break down prematurely and cause the AHR to deploy unnecessarily, with a force that posed a risk of serious harm to a driver's head and neck.  (TPC ¶¶ 11-14, 158.)  These allegations are sufficient to identify how the AHR in Plaintiff's vehicle was defectively designed.

Third-Party Plaintiffs, however, have not adequately pleaded that it would have been feasible for the Moving Defendants to have designed the component at issue in a safer manner.

26

Even assuming that the cited allegations are intended to suggest that the plastic bracket could have been designed with a higher quality plastic (which would not, in the same circumstances, have caused an improper deployment of the headrest mechanism), Third-Party Plaintiffs have nowhere suggested that this alternative design would have been either technologically or economically feasible.  For this reason, the allegations of a design defect are insufficient.

### b.   <u>Manufacturing Defect</u>

The TPC also seeks to plead that the Moving Parties could be liable for Plaintiff's injuries based on a manufacturing defect associated with his vehicle.  Such a claim, unlike one premised on a design defect, must be "based on an allegation that the specific product that caused plaintiff's injury was not manufactured as designed."  *Tears*, 344 F. Supp. 3d at 510-11.  In particular, Third-Party Plaintiffs must plausibly allege "that a specific product unit was defective as a result of 'some mishap in the manufacturing process itself, improper workmanship, or defective materials used in construction.'"  *Morales v. Kimberly-Clark Corporation*, No. 18cv7401 (NSR), 2020 WL 2766050, at *7 (quoting *Colon ex rel. Molina*, 199 F. Supp. 2d at 85); *accord Tears*, 344 F. Supp 3d at 510-11.  "A manufacturing flaw exists when the unit in question deviates in quality and other performance standards from all of the other identical units."  *Morales*, 2020 WL 2766050, at *7 (citing *Oden*, 330 F. Supp. 3d at 890).  Thus, a claim based on a manufacturing defect cannot survive, absent factual allegations capable of supporting a reasonable inference that the manufacturing of the single unit at issue "deviated from identical units" or that all other causes of the alleged harm have been excluded.  *Id*.

In this regard, Third-Party Plaintiffs' allegations are wholly conclusory.  (*See* TPC ¶¶ 129 (alleging that, "[u]pon information and belief, the AHR in Plaintiff's vehicle was set off due to a manufacturing defect"), 134 (alleging that the AHR in Plaintiff's vehicle "posed a serious and

unpredictable risk of injury, due to being a defective AHR manufactured by Grammer and installed by Mercedes"), 198 (alleging that "[t]he Plaintiff's vehicle, [NECK-PRO] and/or AHR is defective in design, manufacture and component materials").)  The TPC fails to allege any facts *at all* regarding the manufacturing process, rendering it insufficient on this basis alone.  *See Morales*, 2020 WL 2766050, at *7 (where "Plaintiff's only allegation regarding the manufacturing process is wholly conclusory . . . the Court finds no basis to conclude that Plaintiff's manufacturing defect claim is anything other than speculative"); *see also Goldin v. Smith & Nephew, Inc.*, No. 12cv9217 (JPO), 2013 WL 1759575, at *3 (S.D.N.Y. Apr. 24, 2013) (holding that plaintiff failed to plead a manufacturing defect in the absence of any facts regarding the manufacturing process, or to indicate the absence of another possible cause for the product's failure).

More importantly, though, the TPC fails to allege any facts suggesting that the AHR in Plaintiff's Mercedes deviated in quality from the other identical units.  To the contrary, the gravamen of Third-Party Plaintiffs' products-liability theory is that the NECK-PRO AHR was defective *across the board*, because it was made with "an inferior and inexpensive form of plastic which cracks and breaks down prematurely under the constant pressure exerted by the springs in the AHR."  (*Id.* ¶ 14; *see also id.* ¶ 138 ("[t]he internal components of the defective AHR are the same across all Mercedes vehicles . . .").  Under these circumstances, the TPC does not – and apparently cannot – adequately state a claim based on a manufacturing defect.  *Goldin*, 2013 WL 175957, at *2 ("a manufacturing defect claim is properly dismissed if a plaintiff has not alleged that 'the particular [product] administered to her had a defect as compared to other samples of that [product]'" (quoting *Reed v. Pfizer*, 839 F. Supp. 2d 571, 577 (E.D.N.Y. 2012))); *Lewis v. Abbott Laboratories,* No. 08 Civ. 7480 (SCR) (GAY), 2009 WL 2231701, at *6

(S.D.N.Y. Jul. 24, 2009) (holding that plaintiff did not assert a manufacturing defect claim where she did not allege that the particular product in question had a defect as compared to other identical products).

c.     <u>**Failure To Warn.**</u>

Under New York law, a manufacturer is obliged "to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known and to warn of the danger of reasonably foreseeable unintended uses of [the] product." *Palmatier v. Mr. Heater Corp.*, 82 N.Y.S.3d 186, 188 (3d Dep't 2018) (citing *Barclay v. Techno-Design, Inc.*, 10 N.Y.S.3d 655 (3d Dep't 2015)).  Based on this law, the Moving Defendants could be found liable for Plaintiff's injuries if they failed "to warn of risks and dangers associated with the use of [their] product," and liability could be imposed either for a "complete failure to warn of a particular hazard or [for] the inclusion of warnings that are insufficient." *Palmatier*, 82 N.Y.S.3d at 188 (quoting *DiMura v. City of Albany*, 657 N.Y.S.2d 844 (3d Dep't 1997)).  For Third-Party Plaintiffs to state a claim based on a failure to warn, they must allege both a duty to warn and a breach of that duty, *see Dunham v. Covidien LP*, No. 19cv2851 (LLS), 2019 WL 6341179, at *3 (S.D.N.Y. Nov. 27, 2019), and they must plead "facts indicating how the provided warnings were inadequate," *Reed*, 839 F. Supp. 2d at 575.

In this regard, the TPC merely refers – with no specificity – to the supposed "inadequacy and inaccuracy of accompanying instructions, labels, diagrams and warnings failed to properly and adequately warn and/or instruct users concerning the dangers and hazards attendant to same and the risk of injuries posed" (TPC ¶ 199), and alleges that, "despite being aware of the AHR defect . . . Mercedes has failed to notify owners of [v]ehicles of the defect" (*id.* ¶ 169).  Like their allegations regarding a purported manufacturing defect, these allegations are entirely

conclusory; indeed, Third-Party Plaintiffs have not only failed to plead facts capable of suggesting that any warnings provided by the Moving Parties were inadequate, but they have failed to plead any facts at all regarding such warnings.

This warrants dismissal of Third-Party Plaintiffs' contribution claims, to the extent they are based on a failure-to-warn theory. *See Goldin*, 2013 WL 1759575, at *5 (dismissing failure-to-warn claim where plaintiff neither "identif[ied] the allegedly defective warnings, nor . . . allege[d] facts in support of her claim that these warnings were, in fact, defective").

### 2. Third-Party Plaintiffs Have Also Failed To Plead the Necessary Element of Causation

Third-Party Plaintiffs' contribution claims are also inadequate because the claims fail to plead that either the claimed defect or claimed failure to warn caused or contributed to Plaintiff's injuries. To the extent their claims are based on a design defect, Third-Party Plaintiffs must plead that the defective design was "a substantial factor" in causing Plaintiff's injury. *Cavanagh*, 2014 WL 2048571, at *2; *see also Tears*, 344 F. Supp. 3d at 510-11 (holding that causation must also be pleaded to maintain a claim based on a manufacturing defect). Similarly, to the extent their claims are based on a failure to warn, they must plausibly allege not only the breach of a duty to warn, but that the breach "was the proximate cause of the plaintiff's alleged injuries." *Dunham*, 2019 WL 6341179, at *3; *see also McGrath v. Bayer HealthCare Pharmaceuticals, Inc.*, 393 F. Supp. 3d 161, 171-72 (E.D.N.Y. 2019).

As noted above, based on the parties' correspondence to the Court, it appears that Plaintiff is, at least in part, claiming that he suffered a head injury in the motor-vehicle collision at issue. (*See* Dkt. 10.) From this, it may well be plausible that a defectively designed plastic triggering mechanism, which caused an improper deployment of the NECK-PRO AHR in Plaintiff's vehicle, in turn caused or contributed to Plaintiff's injuries. In fact, as discussed

above (*see* Discussion, *supra*, at Section II(A)), this is how the Court understands the contribution claims that Third-Party Plaintiffs are attempting to plead, and this is why it has found such claims permissible under Rule 14.  The TPC, however, does not plead any allegations regarding the nature of Plaintiff's injuries, or how the alleged product defect was a "substantial factor" in causing those injuries.  The TPC merely states, in conclusory form, that, "if the Plaintiff sustained injuries as alleged, that same was due to the design . . . defect of the AHR present in his vehicle" (*id.* ¶ 130), and that "[i]f Plaintiff was injured in the accident as alleged . . . then same is caused by the direct and proximate result of the Third-Party Defendants' said failures in designing . . . the Plaintiff's [v]ehicle, [NECK-PRO] and/or AHR for sale" (*id.* ¶ 201).  Wholly conclusory allegations regarding causation, like these, are insufficient under Rule 12(b)(6).  *See Krulewich v. Covidien, LP*, No. 19cv2857 (JGK), 2020 WL 5995103, at *4 (S.D.N.Y. Oct. 9, 2020) (finding dismissal appropriate where complaint did not adequately allege "that the [design defect] caused [plaintiff's] injuries, apart from conclusory allegations, such as that the injuries were a direct and proximate result of the defective and unreasonably dangerous product"); *Rodman v. Stryker Sales Corp.*, No. 14cv1102 (JMF), 2014 WL 5002095, at *2 (S.D.N.Y. Oct. 7, 2014) (granting motion to dismiss design-defect claim where plaintiff said "nothing about *how* the [product], even if defective, caused [p]laintiff's injuries" (emphasis in original)).

The TPC, similarly, does not plead how any alleged failure to warn caused or contributed to Plaintiff's injuries, and, when a pleading "fails to link" the purported failure to warn to the plaintiff's injury, dismissal of the claim is warranted.  *Burkett v. Smith*, No. 12cv4895 (LDW) (ARL), 2014 WL 1315315, at *6 (E.D.N.Y. Mar. 31, 2014) (dismissing plaintiff's failure-to-warn claim because she "fail[ed] to link the purported violation to her injury"); *McGrath*, 393

F. Supp. 3d at 172 (dismissing plaintiff's failure-to-warn claim where plaintiff did not plausibly plead that her injuries were caused by [defendant's] failure to warn); *Morales*, 2020 WL 2766050, at *8 (dismissing failure-to-warn claim where plaintiff failed to provide "sufficient, non-conclusory factual allegations" indicating that any failure to warn was the proximate cause of her harm).

### C.    LEAVE TO REPLEAD

While Third-Party Plaintiffs do not specifically request leave to replead, they state, "[i]f despite the foregoing the Court believes that []Third-Party Plaintiffs should re-plead their claims against Third-Party Defendants, that will be done."  (Losman Aff. I ¶ 29; Losman Aff. II ¶ 30.) Even where a party does not have the automatic right to amend its pleading, the Court may grant such leave, and should do so "freely . . . when justice so requires."  Fed. R. Civ. P. 15(a). Moreover, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).  Where an amendment would be futile, however, leave to amend need not be given.  *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile.").

Here, the Court finds that it would be futile to allow Third-Party Plaintiffs to amend their claims for indemnification, as there is apparently no basis for them to plead that they ever had any relationship with the Moving Parties that could give rise to an indemnification obligation. The Court also finds that, in light of the overall thrust of the TPC, it would be futile to allow Third-Party Plaintiffs to amend their contribution claims, to the extent those claims are based on a purported manufacturing defect.  In short, any notion that the allegedly defective headrest

component "deviate[d] in quality and other performance standards from all of the other identical units," *Morales*, 2020 WL 2766050, at *7, is completely at odds with Third-Party Plaintiffs' recitation of the Moving Defendants' alleged across-the-board use of inferior plastic to manufacture that component.  As it may, however, be possible for Third-Party Plaintiffs to cure the pleading deficiencies in their contribution claims, to the extent those claims are based on a design defect and/or a failure to warn, the Court will grant Third-Party Plaintiffs leave to amend those claims, in the interest of justice.[12]

The Court will, however, stay Third-Party Plaintiffs' time to file an amended third-party complaint until after the Court separately resolves Grammer's pending motion to dismiss, as the resolution of that motion may have further bearing on the shape of any amended pleading.  All discovery as to the third-party claims shall also be stayed, pending further Order of the Court.

## CONCLUSION

For the reasons discussed above, all Counts of the TPC are deemed to have been voluntarily withdrawn, except for Counts 1, 3, and 8 (the last of which is not addressed herein). Counts 1 and 3 are hereby dismissed, with prejudice, under Rule 12(b)(6), to the extent they seek either (a) indemnification, or (b) contribution based on the Moving Defendants' alleged defective

---

[12] In the context of a potential amendment, the Court notes that it finds no merit to the Moving Parties' assertions that the TPC is so unintelligible that Third-Party Plaintiffs should be ordered to serve a more "definite" statement on the Moving Parties, within the meaning of Rule 12(e), or that the TPC contains "immaterial and impertinent" matter, such that any existing allegations should be stricken under Rule 12(f).  Nothing about the TPC makes it impossible to understand or unduly prejudicial (*see* Discussion, *supra*, at Sections I(C)(2), (3)); rather, the problems with Counts 1 and 3 are that they fail to plead allegations that give rise to a plausible inference that Plaintiff's vehicle had a design defect, that the Moving Parties failed to warn Plaintiff of that defect and its associated dangers,  or that the design defect or failure to warn caused Plaintiff's injuries.  These are deficiencies under Rule 12(b)(6), nothing more, and nothing less.

manufacture of Plaintiff's vehicle or a component part thereof.  On the other hand, to the extent

Counts 1 and 3 seek contribution based on either a design defect or a failure to warn, they are

dismissed without prejudice to replead, to as to remedy the pleading deficiencies identified

herein.  Pending further Order of the Court, Third-Party Plaintiffs' time to file an amended

pleading is stayed, as is all discovery on the third-party claims.

In light of this Memorandum and Order, the Clerk of Court is directed to close Dkt. 32 on

the Docket of this action.

Dated:  New York, New York
        March 16, 2021

SO ORDERED

_____

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

All counsel (via ECF)