UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------

MICHAEL AINETTE,

                                        Plaintiff,

            -against-

THE MARKET BASKET INC. and MARK
CHERNALIS,

                                        Defendants.

----------------------------------------------------------

THE MARKET BASKET INC. and MARK
CHERNALIS,

                        Third-Party Plaintiffs,

            -against-

MERCEDES-BENZ USA, LLC, DAIMLER
AG, and GRAMMER AG,

                        Third-Party Defendants.

----------------------------------------------------------

19cv04506 (DF)

**MEMORANDUM
AND ORDER**

**DEBRA FREEMAN, United States Magistrate Judge:**

        This personal injury suit is before this Court on consent of the parties, pursuant to

28 U.S.C. § 636(c).  Having previously granted a motion by third-party defendants

Mercedes-Benz USA, LLC ("MBUSA") and Daimler AG ("Daimler") to dismiss the claims

asserted against them by third-party plaintiffs The Market Basket Inc. ("Market Basket") and

Mark Chernalis ("Chernalis") (collectively, "Third-Party Plaintiffs"), the Court now turns to the

separate motion by third-party defendant Grammer AG ("Grammer") to dismiss Third-Party

Plaintiffs' claims against it as well.  For the reasons discussed below, Grammer's motion

(Dkt. 56) is also granted, for lack of personal jurisdiction.

## BACKGROUND

### A.      Factual Background

The background of this action and of the third-party claims is set out more fully in the

Court's decision on MBUSA and Daimler's motion to dismiss (Dkt. 68), familiarity with which

is assumed.  Nonetheless, for clarity and context, the Court will reiterate some of that

background here, and will then turn to summarizing the facts most relevant to the instant motion.

The claims of plaintiff Michael Ainette ("Plaintiff") in this case arise out of a motor-

vehicle accident in which the Mercedes that he was driving was allegedly rear-ended by a

vehicle that was owned by Market Basket and driven by Chernalis.  In his Complaint, Plaintiff

accused Chernalis of negligently driving the Market Basket vehicle and causing Plaintiff's

injuries.  Then, during the course of the litigation, Market Basket and Chernalis apparently

learned that, in the Southern District of Florida, a products-liability class-action suit had been

filed against MBUSA and that, in that case, allegations had been made that a headrest component

in certain Mercedes vehicles was defective and had resulted in head injuries.  Market Basket and

Chernalis then secured leave to implead MBUSA as a third-party defendant in this case, and they

ultimately proceeded to assert third-party claims against MBUSA, Daimler (as MBUSA's

parent), and Grammer (as the manufacturer of the purportedly defective part) (collectively,

"Third-Party Defendants").[1]  Essentially, Third-Party Plaintiffs asserted that Plaintiff's vehicle

contained a defective headrest component, that this component deployed improperly upon the

rear-end collision, that this either caused or contributed to Plaintiff's injuries, and that Third-

---

[1] The Third-Party Complaint also named Daimler North America Corporation ('DNAC")
as a third-party defendant, but Market Basket and Chernalis later stipulated to the dismissal of
their claims against DNAC (Dkt. 31), and the Court "so ordered" that stipulation on July 24,
2020 (Dkt. 34).

Party Defendants should therefore bear all or some responsibility for Plaintiff's claimed damages.  (*See generally* Third-Party Complaint and Demand for Jury Trial, dated Mar. 6, 2020 ("TPC") (Dkt. 19).)

As to Third-Party Plaintiffs' claims against Grammer, in particular, the TPC – the allegations of which, absent an evidentiary hearing, must be construed in the light most favorable to Third-Party Plaintiffs (*see* Discussion, *infra*, at Section I(A)) – pleads that Grammer is a "foreign for-profit corporation with its principal place of business in [] Germany."  (*See* TPC ¶ 100.)  Third-Party Plaintiffs further allege that Grammer "develops and manufactures automotive interior components including headrests . . . which manufacturers then install in their vehicles that are sold throughout the United States."  (*Id.* ¶ 101.)  Specifically, the TPC asserts that Grammer "manufactures the headrests" that, like the one purportedly at issue in this case, include an allegedly "defective" active head restraint ("AHR") and supplies those headrests to Mercedes for installation in their vehicles.  (*Id.* ¶ 102.)

The TPC further pleads that that Grammer "purposefully availed itself of the United States consumer market" by "sending thousands of shipments of vehicle components from Germany to the United States" and that Grammer "specifically targeted the U.S. markets."  (*Id.* ¶¶ 103-04.)  In this regard, Third-Party Plaintiffs allege that Grammer supplied "Neck Pro" headrests – the name Mercedes has given to the AHR in its vehicles – "directly to the Mercedes Defendants' distribution centers in Jacksonville, Florida, as well as to Mercedes-Benz dealerships in the United States and this District."  (*Id.* ¶ 107.)  The TPC also states that Grammer "availed itself of the protection of the U.S. patent laws as the owner or assignee of sixty-six patents registered with the U.S. Patent Office."  (*Id.* ¶ 109.)

B.    **Procedural History**

Plaintiff commenced his action against Market Basket and Chernalis by filing a

Summons and Complaint on June 15, 2018 in the Supreme Court of the State of New York,

County of Bronx.  (*See* Verified Complaint, dated June 7, 2018 (Dkt. 1-1).)  Market Basket and

Chernalis filed an Answer on July 6, 2018 (*see* Dkt. 1-2), and removed the case to this Court on

May 16, 2019, based on diversity jurisdiction.  (*See* Dkt. 1.)  On October 8, 2019, the then-

existing parties to the action consented to proceed before this Court for all purposes, pursuant to

28 U.S.C. § 636(c).  (Dkt. 9.)

On December 16, 2019, the parties submitted a joint status report, in which Market

Basket indicated that it planned to commence a third-party action against MBUSA.  (*See*

Dkt. 10.)  With leave of Court (*see* Dkt. 16), Market Basket and Chernalis eventually filed the

TPC on March 10, 2020 (Dkt. 19).  On March 15, 2021, Grammer consented to this Court's

exercise of jurisdiction over this matter, for all purposes.  (*See* Dkt. 66.)  MBUSA, Daimler, and

DNAC also consented to this Court's exercise of jurisdiction over this matter, for all purposes,

on March 16, 2021.  (*See* Dkt. 67.)[2]

1.    **The Extant Claims of the TPC, as Against Grammer**

The TPC is quite lengthy, and, as pleaded, it contains eight claims.  In the course of

motion practice, however, Third-Party Plaintiffs voluntarily withdrew six of those claim, leaving

---

[2]As noted above (*see supra*, at n.1), this Court approved the stipulation of dismissal of
Market Basket's and Chernalis's third-party claims against DNAC on in July 2020, prior to
DNAC's filing of an express consent to this Court's exercise of jurisdiction over this matter.  In
its decision at Dkt. 68, this Court noted that it assumed that DNAC's recent consent, filed on
March 16, 2021, was intended to be retroactive, and that no party was seeking to challenge this
Court's exercise of authority in approving the stipulation of dismissal.  The parties were directed
to alert this Court promptly if that assumption was in error.  No objections having been raised,
this Court is satisfied that no party is seeking to challenge such exercise of authority.

only Counts 1 and 3, which, respectively, claim that each of the Third-Party Defendants, including Grammer, engaged in negligence and should also be held liable on a theory of strict products liability.  (*See* TPC, at 28-29, 30-31.)[3]

On March 16, 2021, this Court issued a Memorandum and Order dismissing those two Counts as against MBUSA and Daimler under Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief could be granted.  (*See* Dkt. 68.) Specifically, the Court dismissed those claims with prejudice, to the extent they sought either (a) indemnification, or (b) contribution based on MBUSA's and Daimler's alleged defective manufacture of Plaintiff's vehicle or a component thereof, and dismissed the claims without prejudice to replead, to the extent they sought contribution based on either a design defect or a failure to warn.  To date, Third-Party Plaintiffs have not repleaded their contribution claims as permitted by the Court, and thus, at this time, Grammer is the only remaining Third-Party Defendant in the action.

## 2.   **Grammer's Motion To Dismiss**

On January 19, 2021, Grammer filed its motion to dismiss the third-party claims against it under Rules 12(b)(1), (b)(2), and (b)(6) of the Federal Rules of Procedure.  (Third Party Defendant Grammer AG's Notice of Motion to Dismiss Third-Party Plaintiffs' Complaint, dated

---

[3] In connection with their opposition to MBUSA and Daimler's motion to dismiss, Third-Party Plaintiffs withdrew their claims against all Third-Party Defendants for breach of warranty (Count 2), as well as their claims against MBUSA and Daimler for violations of the New York General Business Law, breach of the implied warranty of merchantability, and fraud by concealment (Counts 4-7).  (*See* Affirmation [of Nathan Losman, Esq.] in Opposition to Third Party Defendant Mercedes Benz USA, LLC's Motion to Dismiss the Third-Party Complaint, dated Aug. 24, 2020 (Dkt. 37) ¶ 2.)  Now, in their opposition to Grammer's motion to dismiss, Third-Party Plaintiffs have also withdrawn Count 8 of the TPC, which was directed solely against Grammer, and claimed fraud by concealment.  (*See* 2/12/21 Losman Aff. ¶ 3.)

Jan. 19, 2021 (Dkt. 56).)  In support of its motion, Grammer also filed a memorandum of law (*see* Defendant Grammer AG's Motion to Dismiss Third-Party Plaintiffs' Complaint, dated Jan. 19, 2021 ("Grammer Mem.") (Dkt. 57)); an attorney declaration (Declaration of Frederick W. Reif in Support of Third-Party Defendant Grammer AG's Motion To Dismiss, dated Jan. 19, 2021 ("Reif Decl.") (Dkt. 59); and declarations from two Grammer employees – Gerd Truckenbrodt ("Truckenbrodt"), who states that he serves as "the Director R&D Seat Components EMEA" of the company (*see* Reif Decl., Ex. C (Declaration of Gerd Truckenbrodt, dated Jan. 13, 2021 ("Truckenbrodt Decl.")) (Dkt. 59-3)), and Werner Vogel ("Vogel"), who states that he serves as the company's "Key Account Manager" (*see* Reif Decl., Ex. D (Declaration of Werner Vogel, dated Jan. 18, 2021 ("Vogel Decl.")) (Dkt. 59-4)).  Grammer argues in its motion that the third-party claims against it should be dismissed (1) under Rule 12(b)(2) for lack of personal jurisdiction; (2) under Rule 12(b)(1) for lack of subject-matter jurisdiction (specifically because Third-Party Defendants lack Article III standing to pursue their claims against Grammer); (3) in the alternative, under Rule 12(b)(6) for failure to state a claim; and (4) on the ground that, as a matter of law, Third-Party Plaintiffs are not entitled to indemnification from Grammer.  (*See generally* Grammer Mem.)

On February 12, 2021, Third-Party Plaintiffs filed an attorney affirmation in opposition to Grammer's motion.  (Affirmation [of Nathan Losman, Esq.] in Opposition to Third-Party Defendant Grammer AG's Motion to Dismiss the Third-Party Complaint, dated February 12, 2021 ("2/12/21 Losman Aff.") (Dkt. 62).)[4]  Through this affirmation, Third-Party Plaintiffs, as

---

[4] Contrary to the requirements of the Local Civil Rules of this Court, Third-Party Plaintiffs failed to submit a memorandum of law in connection with their opposition.  *See* Local Civ. R. 7.1(a)(2), (b) (providing that, absent permission of the Court, all oppositions to motions shall include "a memorandum of law, setting forth the cases and other authorities relied upon in [opposition to] the motion").  Third-Party Plaintiffs similarly failed to submit a

noted above (*see supra*, at n.3), voluntarily withdrew Count 8 of the TPC, which had alleged that Grammer engaged in fraud by concealment (*see* 2/12/21 Losman Aff. ¶ 3; *see also* TPC at 8). Third-Party Plaintiffs maintained, however, that their assertion of the Court's jurisdiction over Grammer was proper and that the First and Third Counts of the TPC were appropriately asserted and sufficiently pleaded.  (*See generally* 2/12/21 Losman Aff.)

Grammer filed a reply to Third-Party Plaintiffs' opposition on February 26, 2021.  (*See* Defendant Grammer AG's Reply Memorandum of Law in Further Support of its Motion to Dismiss Third-Party Plaintiffs' Complaint, dated February 26, 2021 ("Grammer Reply Mem.") (Dkt. 65).)

## DISCUSSION

For the reasons discussed below, the Court finds that Third-Party Plaintiffs have not met their burden of demonstrating that the Court has personal jurisdiction over Grammer. Accordingly, the Court need not reach the other grounds for dismissal argued in Grammer's motion, and limits its discussion, below, to the jurisdictional issue.

## I.   APPLICABLE LEGAL STANDARDS

### A.   Rule 12(b)(2)

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides that an action may be dismissed for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).  When faced with a motion

---

memorandum of law in opposition to MBUSA's and Daimler's motion to dismiss (*see* Dkt. 37) and the Court cautioned Third-Party Plaintiffs that a future failure to comply with the rules of the Court could result in sanctions (*see* Dkt. 68).  This Court acknowledges that the instant opposition (Dkt. 62) was filed before the Court's prior warning, and as such, will exercise its discretion to overlook this failure, *see Greene v. Sampson*, No. 18cv6103 (PMH), 2021 WL 355477, at *2, n.5 (S.D.N.Y. Feb. 2, 2021) ("[t]he Court has discretion to overlook a failure to comply with Local Civil Rule 7.1").  Third-Party Plaintiffs are cautioned, however, that, in the future, they will be expected to comply fully with all rules of the Court.

to dismiss brought under this Rule, as well as on substantive grounds, the Court must consider the question of personal jurisdictional first, before considering arguments regarding the merits of the case.  *See TFWNY, LLC v. TFW, LLC*, No. 11-cv-3900 (ADS) (GRB), 2011 WL 6057915, at *2 (E.D.N.Y. Dec. 1, 2011) ("the Court must first address the moving [party's] motion to dismiss for lack of personal jurisdiction before it addresses the substantive merits of the action" (citing *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 211 (2d Cir. 1963)).

On a Rule 12(b)(2) motion, the plaintiff (or third-party plaintiff) bears the burden of demonstrating that the court has personal jurisdiction over the defendant (or third-party defendant).  *Chassman v. Bezzabeh*, No. 15cv4869 (GHW), 2016 WL 7174669, at *1 (S.D.N.Y. Dec. 7, 2016); *see also Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012) ("Once a defendant has raised a jurisdictional defense on a Rule 12(b) motion to dismiss, the plaintiff bears the burden of proving sufficient contacts with the relevant forum to establish jurisdiction over each defendant.").  To overcome a motion based on a claimed lack of personal jurisdiction, the plaintiff must at least "make a *prima facie* showing that jurisdiction exists." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167-68 (2d Cir. 2015) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013)).  The plaintiff's *prima facie* showing must "include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant."  *Chassman*, 2016 WL 7174669, at *1 (quoting *In re Terrorist Attacks on September 11, 2011*, 714 F.3d 659, 673 (2d Cir. 2013)).

Unlike on a motion to dismiss brought under Rule 12(b)(6) for failure to state a claim, the court may look beyond the "four corners of the complaint" on a jurisdictional motion brought under Rule 12(b)(2).  *Andy Stroud, Inc. v. Brown*, No. 08cv8246 (HB), 2009 WL 539863, at *12 n.2 (S.D.N.Y. Mar. 4, 2009).  In deciding a jurisdictional motion, "'a district court has

8

considerable procedural leeway.  It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.'"  *Dorchester Financial Securities, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981), and noting that, on a Rule 12(b)(2) motion, the court may rely on submitted affidavits and other supporting materials submitted in connection with motion); *see also CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 364 (2d Cir. 1986) (the district court is "free to decide the best way to deal with [the] question" of determining personal jurisdiction on a motion to dismiss, and may decide the motion on the basis of affidavits alone or it may permit discovery and/or an evidentiary hearing in aid of the motion).  In the absence of an evidentiary hearing or a trial on the merits, all pleadings and affidavits are "construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor . . . ."  *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993); *see also CutCo Industries*, 806 F.2d at 365; *Hoffritz for Cutlery, Inc. v. Amajac, LTD*, 763 F.2d 55, 57 (2d Cir. 1985).

Personal jurisdiction "over a defendant in a diversity action is determined by reference to the law of the jurisdiction in which the court sits."  *Hoffritz*, 763 F.2d at 57.  Thus, this Court's determination in this case must be based on New York's law of personal jurisdiction.  Under New York law, a court is required to engage in a two-step analysis to determine if it has personal jurisdiction over the defendants.  *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124-25 (2d Cir. 2002).  First, the court must determine whether there is jurisdiction over the defendant under New York's statutory provisions.  *See Chassman*, 2016 WL 7174669, at *2.  Second, the court must determine whether an exercise of jurisdiction under those laws is consistent with federal due-process requirements.  *Id.*

9

B.      **Relevant Provisions of the New York**
        **Civil Practice Law and Rules ("CPLR")**

1.      **CPLR § 301 (General Jurisdiction)**

"A court may assert general jurisdiction over foreign corporations to hear any and all claims against them when their affiliations with the state are so 'continuous and systematic' as to render them essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 323 (1945)). Section 301 of the New York CPLR, which provides that "a court may exercise such jurisdiction over persons . . . as might have been exercised heretofore," CPLR § 301, has been interpreted to "allow[] courts in New York to exercise general personal jurisdiction over individuals who are domiciled in New York, have a physical presence in New York, consent to New York's exercise of jurisdiction, or do business in New York." *Lear v. Royal Caribbean Cruises Ltd.*, No. 20cv4660 (GHW), 2021 WL 1299489, at *4 (S.D.N.Y. Apr. 7, 2021) (quoting *Delgado-Perez v. City of New York*, No. 17cv1194 (LTS) (BCM), 2018 WL 6200039, at *2 (S.D.N.Y. Nov. 28, 2018) (internal quotation marks and alterations omitted)).

Under Section 301, a court sitting in New York will have general jurisdiction over a foreign corporation if the defendant "does business" in the state in the "traditional sense." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 198 (2d Cir. 1990) (citing *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.S.2d 41, 43 (1967)). This has consistently been interpreted to mean that general jurisdiction over a defendant will lie where the defendant is "engaged in such a continuous and systematic course" of doing business in the state as to warrant a finding of its presence in the jurisdiction. *Frummer*, 19 N.Y.2d at 536 (quoting *Simonson v. Int'l Bank*, 14 N.Y.2d 281, 285 (1964)). Occasional or casual business in New York will not confer general

10

jurisdiction in New York such that a foreign corporation may be sued in New York on causes of action that are wholly unrelated to its activities in New York.  *Ball*, 902 F.2d at 198; *see also Cohen v. Vaughan Basset Furniture Co., Inc.*, 495 F. Supp. 849, 850 (S.D.N.Y. 1980).

The New York Court of Appeals has set forth several factors to determine if a foreign corporation is "present" in New York and therefore subject to general jurisdiction here.  These factors include the presence of an office, employees, and bank account within New York, and the solicitation of business in New York.  *Bryant v. Finnish Nat'l Airline*, 15 N.Y.2d 426, 432 (1965) (finding that New York had general jurisdiction over a foreign corporation that, in New York, directly maintained an office where it employed several people, had a bank account, and engaged in public relations and publicity work for the defendant); *Hoffritz*, 763 F.2d at 58.  In addition, general jurisdiction can be found where a defendant's solicitation of business in New York is "substantial and continuous, and defendant engages in other activities of substance in the state." *Landoil Resources Corp. v. Alexander & Alexander Services, Inc.*, 918 F.2d 1039, 1043-44 (2d Cir. 1990).  Under this so-called "solicitation-plus" standard for personal jurisdiction, "once solicitation is found in any substantial degree very little more is necessary to a conclusion of 'doing business.'"  *Id.*, at 1044.

## 2.      CPLR § 302(a) (Specific Jurisdiction)

Where a defendant cannot be found to "do business" and thus to be "present" in New York under Section 301, the plaintiff may look to New York's long-arm statute, Section 302, which requires a lesser showing than that required under Section 301.  *Hoffritz*, 763 F.2d at 58. Section 302(a) confers specific jurisdiction over a non-domiciliary defendant, if the defendant: (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state," and the cause of action arises out of these contacts, (2) "commits a tortious act within

the state," (3) "commits a tortious act without the state causing injury to person or property

within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent

course of conduct, or derives substantial revenue from goods used or consumed or services

rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in

the state and derives substantial revenue from interstate or international commerce," or

(4) "owns, uses or possesses any real property situated within the state."  CPLR § 302(a); *see*

*also Astor Chocolate Corp. v. Elite Gold Ltd.*, No. 18cv11913 (PAE), 2020 WL 7496342, at *8

(S.D.N.Y. Dec. 21, 2020).

As New York courts have explained, Section 302(a) is a "single act statute," and "proof

of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant

never enters New York, so long as the defendant's activities here were purposeful and there is a

substantial relationship between the transaction and the claim asserted."  *Kreutter v. McFadden*

*Oil Corp.*, 527 N.Y.S.2d 195, 198-99 (1988).

### C.    Federal Due-Process Requirements

Where jurisdiction over a defendant is proper under New York's jurisdictional

statutes, constitutional due-process considerations must then be addressed.  To satisfy due

process, a court may exercise jurisdiction over only those defendants that have "minimum

contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional

notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316

(1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  "In judging minimum contacts, a

court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'"

*Calder v. Jones*, 465 U.S. 783, 788 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204

(1977)).  "To establish the minimum contacts necessary to justify 'specific' jurisdiction, the

[plaintiff] first must show that [the plaintiff's] claim arises out of or relates to [the defendant's] contacts with [New York]." *Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1028 (2d Cir. 1997) (citation omitted).  In addition, the plaintiff must show that the defendant "purposefully avails itself of the privilege of conducting activities" in New York such that it "should reasonably anticipate being haled into Court [here]."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citation omitted).

## II.   GRAMMER'S MOTION TO DISMISS

### A.   Third-Party Plaintiffs Have Not Satisfied Their Burden of Showing That the Court May Exercise Personal Jurisdiction Over Grammer Under New York Law.

On its motion, Grammer has come forward with evidence that it is neither present in New York, for purposes of establishing general jurisdiction under Section 301 of the CPLR, nor that it engaged in a transaction capable of giving rise to specific jurisdiction under Section 302(a).  The Court will address each of these points in turn.

### 1.   Lack of General Jurisdiction Under CPLR § 301

At the outset, is clear that this Court may not exercise general jurisdiction over Grammer such that Grammer would be subject to the Court's jurisdiction for all purposes.  As discussed above, in order for general jurisdiction to lie, New York courts have required a foreign corporation to do business in the "traditional sense" such that it is "engaged in such a continuous and systematic course" of doing business in New York as to warrant a finding of its "presence" in the jurisdiction.  *Frummer*, 19 N.Y.2d at 536.  Factors to consider when evaluating the existence of general jurisdiction include the presence of an office, employees, and bank account within New York, and the solicitation of business in New York.  *Bryant*, 15 N.Y.2d at 432. "Other than in 'exceptional cases,' a corporation is 'at home' only in its state of incorporation

and in the state of its principal place of business." *George Moundreas & Co SA v. Jinhai Intelligent Manufacturing Co Ltd*, No. 20cv2626 (VEC), 2021 WL 168930, at *4 (S.D.N.Y. Jan. 18, 2021) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 135 (2014)).  Where a corporation operates in a foreign country and "is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how systematic and continuous, are extraordinarily unlikely to add up to an exceptional case." *Id.* (citing *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016)).

Here, Grammer has presented statements made under penalty of perjury, by corporate representatives with knowledge, that Grammer is organized under the laws of Germany and is headquartered there (*see* Truckenbrodt Decl. ¶ 5), and that the company has no office, employees, or assets in New York (*see* Vogel Decl. ¶¶ 13, 15, 16).  More specifically, Vogel has declared that Grammer "does not have offices, telephone listings or other assets in the State of New York" (*id*. ¶ 13), that it "does not now own or lease any real or personal property in the State of New York" (*id*. ¶ 15), and that it "is not a member, investor, or partner in any entity that is a resident of the State of New York" (*id*. ¶ 16).  Third-Party Plaintiffs have not come forward with any evidence to refute these statements and have not even attempted to suggest that Grammer has an office or employees within this State.  (*See generally* 2/12/21 Losman Aff.) Indeed, Third-Party Plaintiffs concede that, "[a]dmittedly, Grammer does *not* show an office or location within the State of New York."  (2/12/21 Losman Aff. ¶ 7 (emphasis added).)

Rather than rely on physical presence in the State, Third-Party Plaintiffs primarily attempt to argue that Grammer's direction of its products *into the United States* is itself substantial and systematic enough to establish personal jurisdiction in this State.  Along these lines, Third-Party Plaintiffs alleged in the TPC that Grammer "purposefully availed itself of the

United States consumer market" by "sending thousands of shipments of vehicle components from Germany to the United States" (TPC ¶ 103), that Grammer manufactures the AHR components, "which manufacturers then install in their vehicles that are sold throughout the United States" (*id.* ¶ 101), and that Grammer supplies AHR systems "directly to the Mercedes Defendants' distribution centers in Jacksonville, Florida, as well as to Mercedes-Benz dealerships in the United States and this District" (*id.* ¶ 107).  Now, in opposition to Grammer's motion to dismiss, Third-Party Plaintiffs expand on those allegations, pointing out that Grammer's website, which states that it is a "global player in the automotive and commercial vehicle industry," lists 13 locations in the United States (2/12/21 Losman Aff. ¶ 7), and arguing that, even if Grammer "may not have specifically targeted the New York market, [] it assuredly targeted the entire United States market . . . so, it cannot deny that it was aware that its product would be ubiquitous in New York and in use in New York" (*id.* ¶ 15).

The fact that Grammer may have targeted the "United States market" for sale of AHR components, however, even if true, is not sufficient to establish general jurisdiction *in New York State*.  *Reers v. Deutche Bahn AG*, 320 F. Supp. 2d 140, 155 (S.D.N.Y. 2004) ("Conduct directed toward the United States . . . cannot subject a defendant to personal jurisdiction in a particular state.").  This is especially so in light of Vogel's unrefuted statements in his Declaration (discussed more fully below, in connection with the Court's consideration of the question of specific jurisdiction), that, *inter alia*, "Grammer does not have any director, officer, employee, agent or local resident assigned to duty with respect to the [AHR system at issue] in the State of New York" (*id*. ¶ 14), "does not solicit or conduct business" in the State with respect to that AHR system (*id*. ¶ 7), has not entered into any contracts to sell or promote the AHR system in the State (*id*. ¶ 10), and has neither established "channels" for advising users in New York about

the system nor provided users in the State with warranties related to the system (*id*. ¶¶ 9, 27). Under the circumstances, Third-Party Plaintiffs have hardly shown that this is the "exceptional" case in which a corporation that is neither incorporated nor physically located here should nonetheless be found generally subject to the Court's jurisdiction.

Finally, the Court notes that, at one point in their opposition, Third-Party Plaintiffs attempt to argue that "one of the Grammer companies operating in the United States is Grammer Industries, Inc.," which, according to a filing on record with the New York Secretary of State, "is a foreign corporation active [i]n New York," and has a registered agent in New York.  (2/12/21 Losman Aff. ¶ 10.)  In reply, Grammer has explained that, while it does have a subsidiary named "Grammer Industries," that entity is located in South Carolina, and that the "Grammer Industries" referred to by Third-Party Defendants is actually an *unrelated* company that is now known as "Grammer Logistics." (Grammer Reply, at 4.)

In any event, even if Third-Party Plaintiffs could show that Grammer has a New York subsidiary, that would not be sufficient to confer general jurisdiction over Grammer.  *See Galleli v. Crown Imports, LLC*, 701 F. Supp. 2d 263, 271-72 (E.D.N.Y. 2010).  It has been held that, "[w]here the activities of the [] [d]efendant cannot be deemed to have [been] conducted directly within the State of New York, CPLR 301 jurisdiction may be established by attributing the acts of related entities to the [] [d]efendant." *Id.*, at 271.  This may be established in two ways:  where the related entity is deemed a "mere department" of the defendant, or its agent. *Id.* (citing *H. Heller & Co., Inc. v. Novacor Chems., Ltd.*, 726 F. Supp. 49, 54 (S.D.N.Y. 1998)).  A subsidiary will be considered a "mere department" of the defendant "where the defendant's control over the subsidiary is 'pervasive enough that the corporate separation is more formal than real.'"  *Id.*, at 271-72 (quoting *H. Heller & Co.*, 726 F. Supp. at 54).  Jurisdiction based on the

16

agency theory "requires the plaintiff to show that the subsidiary 'does all the business which [the parent corporation] could do were it here by its own officials.'" *Id.*, at 272 (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998)).  In this instance, the TPC is devoid of any allegation regarding any subsidiary of Grammer at all, and Third-Party Plaintiffs' opposition papers merely state, in conclusory fashion, that such a subsidiary exists, without any further information about the purported relationship between the subsidiary and Grammer itself.

At bottom, Third-Party Plaintiffs have not even made a *prima facie* showing that Grammer could be subject to jurisdiction in New York State under CPLR § 301.  It is apparently undisputed that Grammer was neither incorporated in this State, nor maintains its principal place of business here.  Further, Third-Party Plaintiffs have not demonstrated that Grammer has directed its products into New York State in particular, much less has engaged in such a continuous course of doing business in this State so as to be subject to this Court's jurisdiction for all purposes.  Accordingly, the Court finds that it lacks general jurisdiction over Grammer under the applicable state law.

## 2.      Lack of Specific Jurisdiction Under CPLR § 302(a)

Third-Party Plaintiffs have similarly failed to make a *prima facie* showing that this Court may exercise specific jurisdiction over Grammer.  While, pursuant to CPLR § 302, there are several grounds upon which a court may exercise specific jurisdiction, Third-Party Plaintiffs cite no provision of the statute in the TPC, and, in their opposition to Grammer's motion, they cite only to CPLR § 302(a)(1).[5]  (*See* 2/12/21 Losman Aff. ¶ 21.)  That provision permits the exercise

---

[5] While it is not clear to this Court that the only subsection of CPLR § 302 that could apply to subject Grammer to specific jurisdiction in New York is § 302(a)(1), that is the only subsection raised by Third-Party Plaintiffs in any of their papers related to Grammer's motion to dismiss.  As it is Third-Party Plaintiffs' burden to demonstrate that personal jurisdiction exists

of jurisdiction over a non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state," and the cause of action arises out of those contacts.  CPLR § 302(a)(1).  Grammer argues that this provision does not apply because Third-Party Plaintiffs "wholly fail[] to plead conduct in or directed to New York, and the jurisdictional facts establish that Grammer took all of its actions abroad, with no control over the presence of the vehicles involved in the accident in New York."  (Grammer Mem., at 11.)  This Court agrees.

According to Grammer, the AHR systems at issue are manufactured and distributed solely from facilities in Europe, China, and Mexico (Truckenbrodt Decl. ¶ 6), the "quality management took place in several Grammer facilities, also all outside of the United States" (*id.*), and the "Grammer personnel involved in designing and developing the subject AHR Systems all live and work in Germany" (*id.* ¶ 7).  As noted above, Vogel has additionally declared that Grammer "does not solicit or conduct business" in New York State with respect to the AHR system (Vogel Decl. ¶ 7), and, beyond that, he has stated that "neither Grammer nor any of its directors, officers, employees or agents conducted, transacted or participated in the purchase, sale, distribution or resale of the Daimler AHR System[] [*i.e.*, the system at issue] in the State of New York" (*id*. ¶ 12); that it has never "distributed any literature or materials about the Daimler AHR System specifically in or targeted to the State of New York" (*id.* ¶ 8); that it has never "entered into any contracts, service agreements, purchase orders or other agreements for the purpose of directly selling, promoting, advertising or providing the Daimler AHR System in or into the State of New York" (*id.* ¶ 10); that it is "not licensed to sell" the AHR system in the

_____

over Grammer, this Court will not address the potential applicability of other sections of CPLR § 302.

State (*id.* ¶ 11); and that it "has never been required to pay [New York] taxes of any kind" with respect to the system's sale (*id.* ¶ 18).

Moreover, Vogel represents that, contrary to Third-Party Plaintiffs' pleaded allegations that Grammer supplies the AHRs directly to "Mercedes-Benz dealerships in the United States and this District" (TPC ¶ 107), Grammer does not "provide Daimler AHR Systems to MBUSA dealerships in the State of New York or the United States generally, either directly or indirectly through a subsidiary or distributor" (Vogel Decl. ¶ 22), and that it also does not ship the AHR system to any "port of entry" in the United States (*id.* ¶ 23). In fact, Grammer maintains that, once it sells the AHR headrests to Daimler, "it has no control over their use or destination." (*Id.* ¶ 9.) Finally, Vogel represents that Grammer "does not have any parent or subsidiary that maintains an office in the State of New York." (*Id.* ¶ 27.)

In their opposition, Third-Party Plaintiffs offer no evidence to refute any of this, but argue that, under CPLR § 302(a)(1), jurisdiction is nonetheless proper in New York because

> Grammer has not shown that [] it has never had a single transaction
> [in] New York, and on the contrary, it is clear that vehicles with
> Grammer's AHR systems are on the road in New York, and
> certainly, AHR makes replacement parts available for New York
> vehicles that have Grammer components, whether directly, or
> through a supply chain that it is at the head of.

(2/12/21 Losman Aff. ¶ 21; *see also id.* ¶ 15 (arguing that, as Grammer "targeted the entire United States Market," it "cannot deny that it was aware that its product would be . . . in use in New York").) This argument is doubly incorrect. First, it is not Grammer's burden to show that "it never had a single transaction" in the State; rather, as set out above (*see* Discussion, *supra*, at Section I(A)), it is Third-Party Plaintiffs' burden to make at least a *prima facie* showing that jurisdiction exists. Second, the fact that Grammer's products may have *ended up* "on the road in New York," either through Grammer's original sales to Daimler or through the provision of

19

replacement products, and that Grammer would have likely been aware of this, misstates the law. *See J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011).

In *J. McIntyre*, the Supreme Court considered whether a New Jersey court could exercise specific jurisdiction over J. McIntyre, a machine manufacturer incorporated in and operating from England. *See generally id.* The plaintiff in that case had injured his hand while operating a metal-shearing machine manufactured by J. McIntyre. *Id.*, at 878. The plaintiff filed a products-liability suit in New Jersey, where the accident occurred, and J. McIntyre moved to dismiss for lack of personal jurisdiction. *Id.* The plaintiff's assertion that jurisdiction was proper was based primarily on three facts: first, that a United States distributor had agreed to sell J. McIntyre's machines in this country; second, that J. McIntyre officials had attended trade shows in the United States (although not in New Jersey); and third, that several J. McIntyre machines, including the one at issue, had ended up in the state of New Jersey. *Id.* The Supreme Court of New Jersey held that jurisdiction was proper because J. McIntyre knew or reasonably should have known "that its products [were] distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states." *Id.*, at 877 (citing *Nicastro v. McIntyre Machinery America, Ltd.*, 201 N.J. 48, 76 (2010), *rev'd sub nom*, 564 U.S. 873 (2011)).

The Supreme Court reversed, holding that "[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum state." *Id.*, at 882. The Court reasoned that, while J. McIntyre directed marketing and sales efforts at the United States generally, the plaintiff "ha[d] not established that J. McIntyre engaged in conduct purposefully directed at New Jersey." *Id.*, at 885-86. In this regard, the Court noted that "[t]he British manufacturer had no office in New Jersey; it neither

paid taxes nor owned property there; and it neither advertised in, nor sent any employees to, the State." *Id.*, at 886. "Indeed," the Court pointed out the finding of the trial court, made after discovery, that J. McIntyre "[did] not have a single contact with New Jersey short of the machine in question ending up in th[e] state.'" *Id.* The Supreme Court concluded that "[t]hese facts may reveal an intent to serve the *U.S.* market, but they do not show that J. McIntyre purposefully availed itself of the *New Jersey* market." *Id.* (emphases added).

In summarizing its conclusion, the Supreme Court emphasized that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state." *Id.*, at 883 (citation omitted). Moreover, to illustrate the "undesirable consequences" that could arise if the test for personal jurisdiction were to turn on the question of "foreseeability" that the product, by being placed into the stream of commerce, could reach the forum state, the Court wrote,

> [t]he owner of a small Florida farm might sell crops to a large nearby distributor, for example, who might then distribute them to grocers across the country. If foreseeability were the controlling criterion, the farmer could be sued in Alaska or any number of other States' courts without ever leaving town.

*Id.*, at 885.

In this case, as in *J. McIntyre*, Third-Party Plaintiffs have not made any evidentiary showing that Grammer engaged in any conduct purposefully directed at New York. On the other hand, Grammer has come forward with evidence, in the form of declarations by persons with knowledge, that it has no office in New York, does not pay taxes or own property here, and has neither solicited business in, nor sent employees to, this State. (*See* Vogel Decl. ¶¶ 7, 10, 13, 15, 18.) In the face of these unrefuted statements, Third-Party Plaintiffs – like the plaintiff in *J. McIntyre* – have not credibly suggested that Grammer has "a single contact" with the State of

New York "short of the [product] in question" having ended up here.  In the end, Third-Party

Plaintiffs' argument that Grammer is subject to jurisdiction in New York because it targeted "the

entire United States market" is unavailing, because it is a foreign defendant's contacts "with the

forum state, not with the United States as a whole, that are relevant to the personal jurisdiction

inquiry."  *Reers*, 320 F. Supp. 2d at 155.  Similarly, the argument that Grammer placed its

product into the stream of commerce, and therefore "cannot deny that it was aware that its

product would be . . . in use in New York," is insufficient to confer specific jurisdiction.  *See*

*J. McIntyre*, at 883 ("[t]he placement of a product into the stream of commerce, without more, is

not an act of the defendant purposefully directed toward the forum state.").

Finally, the Court notes Third-Party Plaintiffs' rather odd suggestion that the Court

should find it proper to exercise personal jurisdiction over Grammer here not only because of the

existence of the class-action suit involving Mercedes vehicles, pending in the Southern District

of Florida (in which Grammer was apparently named as a defendant), but also because "there is

yet another class action lawsuit [pending in the District of Massachusetts] that has been

commenced against Grammer, precisely for faulty AHRs, and this time in various Chrysler

vehicles."  (2/12/21 Losman Aff. ¶ 8.)  Third-Party Plaintiffs have not shown that the

prosecution or defense of either of these lawsuits, or that evidence developed in either of the

cases, relates to any specific transaction of business by Grammer in New York State, or to its

provision of goods or services in the State, much less shown that the causes of action asserted by

the third-party claims somehow "arise[] out of those contacts."  CPLR § 302(a)(1).  Certainly,

the mere existence of other litigation, pending in other forums, is insufficient to demonstrate a

basis for jurisdiction here.

This Court therefore concludes that Third-Party Plaintiffs have not met their burden of showing that the exercise of specific jurisdiction over Grammer, under CPLR § 302(a)(1), would be proper.

**B.     The Court Need Not Reach the Question of Whether Exercising Personal Jurisdiction Would Violate Due Process.**

If the Court were to have determined that Third-Party Plaintiffs had satisfied the requirements of CPLR §§ 301 or 302(a)(1), then it would have needed to proceed to consider whether its exercise of personal jurisdiction over Grammer would have comported with constitutional due-process requirements.  (*See* Discussion, *supra*, at Section I(C).)   The Court, however, need not engage in that analysis because it has concluded that it may not exercise personal jurisdiction over Grammer under the laws of New York.  *See Bohn v. Bartels*, 620 F. Supp. 2d 418, 426 (S.D.N.Y. 2007) ("[t]he Court need not evaluate jurisdiction under due process guarantees of the United States Constitution because [plaintiff] has failed to show that [defendant] is subject to jurisdiction under New York law.").

## CONCLUSION

For the foregoing reasons, all Counts of the TPC against third-party defendant Grammer AG are deemed to have been voluntarily withdrawn, except for Counts 1 and 3, and these remaining claims are hereby dismissed as against Grammer, with prejudice, under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

In light of this Memorandum and Order, the Clerk of Court is directed to terminate

Grammer AG as a party to this case, and to close Dkt. 56 on the Docket of this action.

Dated:  New York, New York
        August 2, 2021

                                        SO ORDERED

                                        _____
                                        DEBRA FREEMAN
                                        United States Magistrate Judge

Copies to:

All counsel (via ECF)